DMB:JPL/MSA
F.#2011R00783

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                 Cr. No. 11-623 (JG)

    - against -

AGRON HASBAJRAMI,

              Defendant.

- - - - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTION FOR A PERMANENT ORDER OF DETENTION

                          LORETTA E. LYNCH
                          United States Attorney
                          Eastern District of New York
                          271 Cadman Plaza East
                          Brooklyn, New York 11201

MATTHEW AMATRUDA
SETH D. DuCHARME
Assistant United States Attorneys
    (Of Counsel)

I.  PRELIMINARY STATEMENT

The government hereby moves for a permanent order of detention with respect to defendant Agron Hasbajrami. On September 8, 2011, a grand jury in the Eastern District of New York returned an indictment charging Hasbajrami with providing and attempting to provide material support to terrorists, in violation of 18 U.S.C. § 2339A. As discussed below, Hasbajrami is both a danger to the community and a risk of flight. The evidence at trial will establish that Hasbajrami, while in Brooklyn, New York, provided funds to an individual overseas with the intent that the funds be used to support the activities of that individual's jihadist fighting group in Pakistan. Hasbajrami continued to provide funds after being informed that the group was engaged in military operations against, and had killed, American soldiers. Hasbajrami then sought to travel to Pakistan himself so that he could join the fighting group, indicating that he personally wished to die as a martyr. Hasbajrami was arrested on Tuesday, September 6, 2011, after arriving at John F. Kennedy International Airport ("JFK Airport") with a one-way ticket to Istanbul, Turkey, where he planned to meet with terrorist travel facilitators who could help him join the fighting himself. If convicted of the charge currently pending against him, Hasbajrami faces a guidelines sentence of 15 years' imprisonment.

II. <u>Factual Background</u>

Detailed below is a proffer of certain evidence that the government will establish at trial. See <u>United States v. LaFontaine</u>, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings); <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995) (same). See also <u>United States v. Defede</u>, 7 F. Supp. 2d 390, 393 (S.D.N.Y. 1998) ("The Bail Reform Act requires a hearing prior to the entry of a detention order . . . . [I]t now is clear in this Circuit that the government as well as the defendant 'may proceed by proffer,' which is implicit in the fact that the rules of evidence are inapplicable.") (citations omitted).

A. <u>Hasbajrami and Individual #1</u>

Hasbajrami is a citizen of Albania and a lawful permanent resident of the United States. He entered the United States on February 12, 2008, and he resides in Brooklyn, New York.

Beginning in 2010, and continuing through 2011, Hasbajrami sent money to an identified individual overseas (hereinafter "Individual #1") with the intent that the funds be used to support the activities of Individual #1's jihadist fighting group in the Federally Administered Tribal Areas of

3

Pakistan (the "FATA").[1] Hasbajrami's provision of support to Individual #1 followed Individual #1's public solicitation of funds for jihad. Individual #1 explained that he was fighting jihad in Afghanistan, and had facilitated the travel of numerous others, including individuals from the West, to participate in jihad as well.

In order to preserve the secrecy of their communications, Hasbajrami used a variety of means, including multiple email addresses, to communicate with Individual #1. For example, after he and Individual #1 had used the same email addresses for a period of time, he asked Individual #1 to create a new email address and send it to him by text message. Hasbajrami then created a new address for himself as well, and continued the correspondence with Individual #1.[2]

B. <u>Financial Support and Initial Attempt to Travel</u>

During the time period charged in the Indictment, Hasbajrami sent over $1,000 to Individual #1, and engaged in substantial planning to join Individual #1 in the FATA region of Pakistan. For example, in three transactions between December

---

[1] As has been extensively reported in the media, the FATA region of Pakistan is home to many prominent terrorist organizations, including al-Qaeda, the Islamic Jihad Union, and Tehrik-i-Taliban Pakistan.

[2] Despite Hasbajrami's efforts, the FBI, using various law enforcement techniques, was able to establish that each address was actually being used by Hasbajrami.

4

2010 and February 2011, Hasbajrami sent Individual #1 over $600 by Western Union transfer to a named intermediary in Bannu, Pakistan (which borders the FATA) and Miram Shah, Pakistan (which is in North Waziristan in the FATA).

Hasbajrami thereafter told Individual #1 that he wanted to travel to where Individual #1 was located and "marry with the girls in paradise" – common jihadist rhetoric that refers to dying as a martyr while fighting jihad. On or about April 7, 2011, Hasbajrami asked Individual #1 for directions to the "destination." Individual #1, in response, provided Hasbajrami with detailed instructions on how to reach him in North Waziristan, Pakistan. Specifically, Individual #1 told Hasbajrami to obtain an Iranian visa, and fly to Iran, either directly or from Istanbul, Turkey. Individual #1 suggested airlines offering flights from Istanbul to Tehran, Iran. From Iran, another contact would facilitate Hasbajrami's travel into Pakistan. According to Individual #1, Hasbajrami needed to bring enough money to pay for both food and a weapon. Individual #1 further instructed that, once in North Waziristan, Hasbajrami could locate Individual #1's group through members of the Tehrik-i-Taliban Pakistan ("TTP"), a designated foreign terrorist organization. Hasbajrami thereupon informed Individual #1 that he had applied for an Iranian visa.

On or about April 17, 2011, Hasbajrami informed Individual #1 that he would provide as much money as possible, but that it was difficult to ask for money from fellow Muslims because they became apprehensive "when they hear it is for jihad." On or about April 29, 2011, Hasbajrami sent Individual #1 an additional $200 by Moneygram transfer to an intermediary.

On or about May 10, 2011, Individual #1 updated Hasbajrami about the success of his military operations. Specifically, Individual #1 told Hasbajrami that his group had killed American soldiers, but that he had been injured. Hasbajrami responded that Individual #1's injury was a sign of martyrdom, and shortly thereafter sent a payment to a travel agency that specializes in obtaining visas and passports.

On or about August 9, 2011, Hasbajrami purchased a one-way ticket from Newark Liberty International Airport in Newark, New Jersey to Istanbul, Turkey, via Portugal. Four days later, Hasbajrami cancelled the ticket. In an email message to Individual #1, Hasbajrami explained that he had just learned that "the road" was problematic. Hasbajrami added, however, that his visa would expire on August 22.

On or about August 24, 2011, after a break in communications with Hasbajrami, Individual #1 responded that he had been out of touch because he was engaged in an operation. In response to another request for financial support, Hasbajrami

6

stated that he would bring additional money to Individual #1 "when I come see you."

On or about August 28, 2011, Individual #1 told Hasbajrami that he was traveling to "another frontline," and that Hasbajrami could meet him in Iran.

C. <u>Subsequent Attempt to Travel and Arrest</u>

On or about September 3, 2011, a confidential source (the "CS") working with the Federal Bureau of Investigation (the "FBI") sent Hasbajrami an email message indicating that the CS could assist Hasbajrami with travel if Hasbajrami so wished. The CS indicated that he was a member of the Islamic Jihad Union ("IJU"), a designated foreign terrorist organization that is also concentrated in the FATA region of Pakistan, and that has also engaged in attacks on American troops in Afghanistan. Hasbajrami responded that he was hoping to meet someone in Iran, and asked if he should travel the next week.

On or about September 5, 2011, the CS responded that Individual #1's group was a different group from the IJU, and that it was Hasbajrami's choice whether to travel with Individual #1 or with the IJU. That same day, Hasbajrami purchased a ticket to Istanbul, Turkey, departing on September 6, 2011 from JFK Airport in Queens, New York. Hasbajrami planned to fly on a one-way ticket, with no return trip booked.

7

On or about September 6, 2011, Hasbajrami informed the CS that he was flying that day, and that he would meet the CS's group in Istanbul. During the afternoon of September 6, 2011, Hasbajrami traveled to JFK Airport, where he was arrested at an international departures terminal. At the time of his arrest, Hasbajrami was carrying, among other items, his Albanian passport (with the recently-expired Iranian visa), a tent, boots and cold-weather gear.

After he was arrested, Hasbajrami was interviewed by special agents of the FBI. Hasbajrami was informed of, and waived in writing, his Miranda rights. Hasbajrami then told the interviewing agents, in sum and substance and in part, that he had sent money to Individual #1, and that he had intended to travel to Pakistan to fight. FBI agents also conducted a search of Hasbajrami's residence. During the search, the agents found, among other items, a group of handwritten notes. One of the notes stated, "Do not wait for invasion, the time is martyrdom time."

III. Discussion

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., the Court may order a defendant detained pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (detention appropriate where "no condition or combination of

8

conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of dangerousness must be supported by clear and convincing evidence. A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

The Bail Reform Act specifies four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g). In addition, pursuant to 18 U.S.C. § 3142(e)(3)(C), there is a presumption of detention if there is probable cause to believe that the defendant has committed a federal crime of terrorism listed in "[18 U.S.C.] section 2332b(g)(5)" with a maximum sentence greater than ten years' imprisonment. Because the defendant has been indicted by a grand jury for violating 18 U.S.C. § 2339A, which is one of the statutes listed in 18 U.S.C. § 2332b(g)(5), and which carries a maximum sentence of fifteen years' imprisonment, there is probable cause to believe that he has committed such a federal crime of terrorism. Therefore, "[s]ubject to a rebuttable presumption, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance

9

of the [defendant] as required and the safety of the community." Id.

In addition to the statutory presumption of detention, all four detention factors weigh overwhelmingly in favor of detention. First, providing and attempting to provide material support to terrorists is an extremely serious crime. Moreover, the Indictment charges Hasbajrami with providing and attempting to provide material support intending that it further a conspiracy to commit murder in a foreign country – specifically that it further the activities of a jihadist fighting group in Pakistan which was reporting to Hasbajrami its success in killing American servicemen. If convicted of this count, Hasbajrami would face a guidelines range of life imprisonment, if the sentence were not capped by the statutory maximum sentence of fifteen years' imprisonment. See 18 U.S.C. § 2339A; U.S.S.G. §§ 2X2.1, 2A1.5, 3A1.4.

Second, Hasbajrami is a citizen of Albania with significant ties abroad. Moreover, Hasbajrami has been planning a one-way flight departing the United States for several months, and was arrested at JFK Airport as he prepared to board a one-way flight to Turkey. In preparation for his travel, he had obtained a visa to enter Iran. At the time of his arrest, he was attempting to travel to join a jihadist fighting group, in

support of his goal of having a "marriage" in "paradise" – in other words, to die a martyr fighting jihad.

Third, Hasbajrami poses a significant danger to the community if released. As described above, Hasbajrami has repeatedly expressed and provided strong support for an extremist cause, not only by sending money to support terrorist activities, but also by attempting to travel himself to fight jihad and die.

Finally, the evidence of Hasbajrami's guilt is overwhelming, as indicated by the evidence outlined above. Email messages, business records, search warrant results, law enforcement testimony, and Hasbajrami's own statements will all establish his guilt beyond a reasonable doubt at trial.

IV. Conclusion

For the reasons cited above, the government hereby moves for a permanent order of detention in this case.

Dated:   Brooklyn, New York
         September 9, 2011

                                    Respectfully submitted,

                                    LORETTA E. LYNCH
                                    United States Attorney
                                    Eastern District of New York

                            By:     _____/s/_____
                                    Matthew Amatruda
                                    Seth D. DuCharme
                                    Assistant U.S. Attorneys