

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

DMB:MSA/SDD  
F.#2011R00783

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

November 21, 2012

**Via Hand Delivery and ECF**

Honorable John Gleeson
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: United States v. Agron Hasbajrami
     <u>Criminal Docket No. 11-623 (S-1)(JG)</u>

Dear Judge Gleeson:

  The government submits this letter in connection with the defendant's sentencing, which is scheduled for December 21, 2012, and in response to the Court's order that the parties address Section 6B1.2 of the United States Sentencing Guidelines. For the reasons set forth below, the government respectfully requests that the Court accept the plea and sentence the defendant to a term of imprisonment of fifteen years.

**I.** **Background**

  As set forth in the Presentence Investigation Report ("PSR"), as amended on October 5, 2012, an investigation by agents of the Joint Terrorism Task Force ("JTTF") revealed that between April 2, 2011, and August 28, 2011, the defendant communicated with a Pakistan-based extremist ("Individual #1") who informed the defendant that he was part of a terrorist organization. (PSR ¶ 2). Individual #1 – a foreign national who is not a government agent, and whose identity is known to the parties – told the defendant that his group was engaged in attacks on American soldiers in Afghanistan. In addition, Individual #1 promoted violent extremist activity through internet communications and publications, and solicited funds that he represented would be used to support terrorist operations. During the course of their communications, the defendant sent approximately $1,000 to Individual #1 to support

Islamic fundamentalist terrorist operations.  In addition, the defendant and Individual #1 planned for the defendant's travel from New York to the Federally Administered Tribal Areas ("FATA") of Pakistan, where the defendant hoped to join a jihadist fighting group.  During their communications, the defendant discussed with Individual #1 his desire to "marry with the girls in paradise" – that is, to die as a martyr while engaged in fighting a holy war.

Upon learning of the defendant's communications with Individual #1, and discovering that the defendant had lost contact with Individual #1 for a period of time, the government introduced a cooperating source ("CS") to the defendant through online communications in order to determine whether the defendant remained intent on supporting terrorism and joining a foreign fighter group abroad.  Through the use of the CS, the government learned that the defendant was continuing to make efforts to support international terrorism, and in fact was pursuing his plans to travel from the United States to the Middle East and ultimately make his way to the FATA to join a foreign fighter group.

On September 6, 2011, JTTF agents arrested the defendant at John F. Kennedy International Airport ("JFK") in Queens, New York, from where he was about to travel to Turkey en route to Pakistan.  (PSR ¶ 4).  Following his arrest, the defendant made statements to agents regarding his offense conduct.[1]  On September 8, 2011, a grand jury in this District returned an indictment charging the defendant with one count of providing material support to terrorists, in violation of 18 U.S.C. § 2339A(a).  On January 26, 2012, the grand jury returned a superseding indictment, which including three additional counts of providing and attempting to provide materials support, consisting principally of money (some of which was to be used for weapons) and personnel.  On April 12, 2012, following discovery disclosures and plea negotiations, the defendant pled guilty to Count Two of the superseding indictment.  (PSR ¶ 1).

---

[1]  The government offers copies of the defendant's post arrest statements as Exhibit A, and respectfully requests that they be filed under seal because the statements relate to ongoing investigations.  See United States v. Doe, 63 F.3d 121, 128 (2d Cir. 1995); United States v. Haller, 837 F.2d 84, 87 (2d Cir. 1988).  In the event that the Court denies the government's motion to seal Exhibit A, the government would respectfully withdraw the exhibit to avoid public disclosure.

>During his plea allocution, the defendant stated:
>
>Between April 1, 2011 and September 6, 2011, I tried to help a group of people who I believed were engaged in fighting in Pakistan. I agreed with the group and attempted to help the group by providing money, and myself, in support of their efforts. I obtained an Iranian visa and, on September 6, 2011, I went to JFK in Queens, New York in an effort to travel to [sic] Middle East in an effort to join the group.

(Plea Tr. 18-19). In addition, at the plea proceeding, the Court informed the parties that the Court would reserve decision as to whether to accept the plea, and directed the parties to address Guidelines Section 6B1.2.

With respect to the defendant's offense conduct, the parties stipulated to a joint proposed amendment to the PSR, a copy of which has been previously provided to the Court. In sum, the parties agreed that the defendant sent money to, and attempted to join, a group of people whom he believed were engaged in fighting in the FATA.

## II. Applicable Law

### A. Acceptance of the Guilty Plea

Rule 11(c)(3)(A) of the Federal Rules of Criminal Procedure directs that where a defendant "pleads guilty . . . to . . . a charged offense" pursuant to a plea agreement specifying that "an attorney for the government . . . will move to dismiss other charges," then "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Section 6B1.1(c) of the United States Sentencing Guidelines repeats the language of Rule 11(c)(3)(A).

Section 6B1.2 sets forth the standards for acceptance of plea agreements under the Guidelines. As pertinent here, Section 6B1.2(a) specifies that "the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing Guidelines." Whether to accept a plea agreement rests within the Court's discretion. See United States v. Severino, 800 F.2d 42, 45 (2d Cir. 1986); United States v.

3

Torres-Echavarria, 129 F.3d 692, 696 (2d Cir. 1997); see also Fed. R. Crim. P. 11(c)(3)(A) Advisory Committee Notes ("The plea agreement procedure does not attempt to define criteria for the acceptance or rejection of a plea agreement. Such a decision is left to the discretion of the individual trial judge.").

    B.    Imposition of Sentence

It is settled law that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted).

Title 18, United States Code, Section 3553(a) provides, in part, that a sentencing Court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Thus, the Court must first calculate the applicable Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. Notably, "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

4

    C.    <u>Application of the Terrorism Enhancement</u>

Section 3A1.4 of the Sentencing Guidelines applies where "the offense is a felony that involved, or was intended to promote, a federal crime of terrorism," as defined in 18 U.S.C. § 2332b(g)(5). U.S.S.G. § 3A1.4 & comment n. 1. Section 2332b(g)(5), in turn, provides that:

> [T]he term "Federal crime of terrorism' means an offense that -
>
> (A) is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and
>
> (B) is a violation of [one of certain enumerated statutes].

18 U.S.C. § 2332b(g)(5). The Second Circuit has held that by requiring that the underlying crime "be calculated to influence or affect . . . or to retaliate against government conduct," the statute does not require "proof of a defendant's particular motive." <u>United States v. Awan</u>, 607 F.3d 306, 317 (2d. Cir. 2010). "[A] person may intend and may commit an offense that is so calculated even if influencing or retaliating against government is not his personal motivation." <u>Id</u>. By way of example, "a person who murders a head of state" commits an act of terrorism if he knows "that his crime will influence or affect the conduct of government . . . even if his particular motivation in committing the murder is to impress a more established terrorist with his abilities." <u>Id</u>. (emphasis in original). In this case, the offense of conviction - Count Two - charged a violation enumerated in 18 U.S.C. § 2332b(g)(5)(b).

**III. <u>Guidelines Calculation</u>**

As set forth in the PSR, the defendant's total adjusted offense level for Count Two is 42. (PSR ¶¶ 7-15). The Guidelines for Count Two are calculated as follows:

| | |
|---|---:|
| Base Offense Level: (2X2.1) | 33 |
| Plus: Terrorism Enhancement (3A1.4(a)) | +12 |
| Less: Acceptance of Responsibility (3E1.1) | - 3 |
| Adjusted Offense Level: | <u>42</u> |

5

Additionally, while the defendant has no known criminal record, pursuant to the application of the terrorism enhancement in Section 3A1.4(b), the defendant's criminal history category is VI. Category VI provides for an applicable advisory Guidelines sentence of 360 months to life imprisonment. However, because Count Two carries a statutory maximum sentence of fifteen years, the defendant's effective Guidelines range of imprisonment is 180 months. (PSR ¶ 41).

### IV. The Court Should Accept the Defendant's Plea Because it Reflects a Reasonable Exercise of Prosecutorial Discretion

On April 12, 2012, pursuant to a plea agreement with the government and in satisfaction of a four-count superseding indictment, the defendant pled guilty to one count of attempted material support for terrorists, in violation of 18 U.S.C. § 2339A. PSR ¶ 1. During the guilty plea proceeding, the Court directed the parties to address at sentencing whether it should accept the plea agreement pursuant to Rule 11(c)(3)(A) and Section 6B1.1(c).

As discussed above, both Rule 11(c)(3)(A) and Section 6B1.1(c) direct that, where a defendant pleads guilty pursuant to a plea agreement specifying that the government "will move to dismiss other charges," "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report." Section 6B1.2 sets forth the factors governing the Court's decision:

> the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing Guidelines.

U.S.S.G. § 6B1.2. Whether to accept a plea agreement pursuant to the above standards rests within the Court's discretion. Severino, 800 F.2d at 45; Torres-Echavarria, 129 F.3d at 696; Fed. R. Crim. P. 11(c)(3)(A) Advisory Committee Notes.

The Court should accept the plea agreement because the negotiated disposition appropriately balances the seriousness of the defendant's conduct against the significant prosecutorial risks and burdens avoided through a negotiated resolution, and permits careful allocation of prosecutorial and other governmental resources that would otherwise be devoted to

6

pretrial and trial litigation. On one hand, as discussed further below, the defendant's crimes were profoundly serious: he sent significant sums of money in support of terrorist activities aimed at American servicemen abroad, and he himself attempted to travel abroad with the intent to join a jihadist fighting group. He posed a real danger to American lives and interests overseas, and accordingly deserves a very serious sentence.

On the other hand, had the government and the defendant not reached a plea agreement, the government would have been faced with the risk of trial, which in all cases includes the possibility of adverse verdicts on one or more counts of the indictment. Moreover, had the defendant elected to proceed to trial, or to exercise all of his pretrial litigation options, the government would likely have been required to engage in substantial litigation, including at a minimum a motion to suppress evidence obtained or derived pursuant to the Foreign Intelligence Surveillance Act, see 50 U.S.C. §§ 1801 et seq.; a motion to suppress the defendant's post-arrest statements; and one or more motions for protective orders pursuant to the Classified Information Procedures Act, see 18 U.S.C. App. III § 4. As the Court is aware, such litigation can be unusually burdensome even in the most straightforward of cases, and can pose exceptional burdens where complex issues are present. Nor do such burdens fall solely on the Department of Justice and the investigating agencies associated with the JTTF. Rather, the responsibility to protect against undue disclosure of classified information requires coordination with other government agencies; the relevant agency or agencies must in such cases devote substantial effort to analyzing and describing potential risks and setting forth that analysis for the Court. Indeed, pursuant to Second Circuit law, any declaration seeking to assert the privilege against the disclosure of classified information must be accompanied by a personal declaration by the "head" of the relevant agency. See United States v. Aref, 533 F.3d 72, 78-80 (2d Cir. 2008).

Plainly, such declarations must be produced, and such motions must be litigated, where necessary in the appropriate case. Equally plainly, where the government can secure a substantial sentence that adequately reflects the Section 3553(a) factors without causing additional burdens on its counter-terrorism apparatus, it is in the national security interest of the United States to do so. In the judgment of the government, the mutual concessions in the plea agreement in this case accomplish those twin aims by providing the sentencing court with the opportunity to impose a reasonable sentence in light of the defendant's acceptance of responsibility, and by permitting the

7

government to focus its resources on additional offenders and additional threats.  <u>See generally</u> United States Attorney's Manual § 9-27.420.

Such interests have long been recognized as appropriate bases for the exercise of prosecutorial discretion:

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.  Judicial supervision in this area, moreover, entails systemic costs of particular concern.

<u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985).  As this Court has noted, "Although the Supreme Court used that language in addressing the decision whether to prosecute, it is equally applicable . . . to whether an arguably reasonable sentence bargain is appropriate."  Hon. John Gleeson, <u>Idea: the Sentencing Commission and Prosecutorial Discretion: the Role of the Courts in Policing Sentence Bargains</u>, 36 Hofstra Law Review 639, 656 n.68 (2008).  While this case does not involve sentence bargaining, the Supreme Court's reasoning applies where a plea bargain effectively limits the defendant's sentence to the statutory maximum prison term.

Balanced against the above prosecutorial interests, a sentence at the statutory maximum of fifteen years will "adequately reflect the seriousness of the actual offense behavior" and "not undermine the statutory purposes of sentencing or the sentencing Guidelines."  As set forth below, the plea agreement preserves the Court's authority to impose a significant sentence that serves the statutory interests of sentencing.  While the superseding indictment included additional substantive counts of providing and attempting to provide material support to terrorists, in that the defendant sent money overseas on separate occasions, and also sought to join a group of foreign fighters, the counts were related to a common scheme, and the scheme to travel abroad never progressed past the airport.  Under all of the foregoing circumstances, the Court should accept the plea agreement.

**V.    Sentencing Analysis**

   A.    The Probation Department Accurately Calculated the
         Applicable Advisory Guidelines Range

         The PSR appropriately applied the terrorism enhancement set forth in § 3A1.4.  As noted above, the offense of conviction, 18 U.S.C. § 2339A(a), is among the crimes listed in 18 U.S.C. § 2332(g)(5)(B), and the crimes supported by the defendant – jihadist fighting against the American, Pakistani, or allied forces in Afghanistan and the FATA, were squarely among those "calculated to influence or affect the conduct of government by intimidation or coercion," id. § 2332(g)(5)(A).  Accordingly, his applicable advisory Guidelines term of imprisonment is the statutory maximum sentence of 180 months' imprisonment.

   B.    The Statutory Maximum Appropriately Accounts for the
         Significance of the Defendant's Criminal Conduct in the
         Context of the Guilty Plea, which Spared the Government
         Significant Litigation Risks and Burdens

         The Sentencing Guidelines treat terrorism offenses severely and thus provide an appropriate touchstone from which to begin the 3553(a) analysis.  As the Second Circuit noted in 2010, "the Guidelines signal that any crime promoting terrorism is to be viewed as extremely serious."  United States v. Stewart, 597 F.3d at 521 (2d Cir. 2010).  Likewise, "the strong need to deter terrorism is evident from the Guidelines recommendation that a terrorism defendant be accorded a criminal history of VI, the highest level possible, without regard to [a defendant's] actual criminal record."  Id.

         Under the circumstances presented here, as set forth above with respect to the 6B1.2 analysis, where the defendant's plea of guilty spared the government the risks and burdens associated with prosecuting a case involving classified information, and that was likely to consume the time and attention of JTTF investigators whose primary duties are protecting national security through the prevention and investigation of other crimes of terrorism, a sentence at the statutory maximum of fifteen years' imprisonment is not unreasonable.

   C.    The Nature and Circumstances of the Offense Weigh in
         Favor of a Sentence of Fifteen Years

         Although certainly not dispositive, it is not wholly irrelevant that the defendant in this case was only able to send

9

approximately $1,000 overseas, and that his attempt to join a terrorist organization was disrupted well before he even left the United States. Nor does this case present as an aggravating factor proof of actual harm to victims; rather, the government does not argue that the defendant's conduct contributed to any actual harm overseas. See United States v. Stewart, 590 F.3d 93, 175 (2d Cir. 2009) (Walker, J., dissenting) ("Congress has been unmistakably clear that, as a general matter, the achievement of actual harm may aggravate the seriousness of a terrorism crime but that the absence of proven harm does not mitigate such a crime.). The nature and seriousness of the defendant's attempt to support a terrorist conspiracy to commit murder in a foreign country weighs strongly in favor of a sentence at the statutory maximum of fifteen years in this case, but do not, given the defendant's acceptance of responsibility, demand a sentence of life imprisonment. See 18 U.S.C. § 3553(a)(1) and (a)(2)(A).

  D. A Sentence at the Statutory Maximum Would Reflect the Seriousness of the Offenses, Promote Respect for the Law, and Provide Just Punishment

There are few more serious offenses in the federal criminal code than attempting to support a crime of terrorism. A sentence at the statutory maximum of fifteen years would reflect the seriousness of the offense, promote respect for the law and provide just punishment for the defendant's criminal conduct, pursuant to 18 U.S.C. § 3553(a)(2)(A).

  E. The Deterrence Factor Weighs Heavily in Favor of a Sentence at the Statutory Maximum

Deterrence is a key factor in the Court's assessment of the appropriateness of the defendant's sentence. A sentence of fifteen years in this case would appropriately send a message to the community at large that the United States does not tolerate such abhorrent criminal conduct. Given the compelling need to deter the continued threat that home-grown terrorists like the defendant pose to the United States and our allies abroad, a sentence at the statutory maximum would send a clear message to any would-be jihadists that such conduct carries substantial consequences.

  F. Protecting the Public Requires a Sentence at the Statutory Maximum

The evidence adduced during the investigation clearly reflects the risk posed by the defendant. From the start of his criminal venture, the defendant consistently pressed onward to

10

his goal of supporting and even personally joining a terrorist group. Because the defendant is a serious potential danger to the community, only extraordinary incapacitation will protect the public from his return to violent jihad.

## VI. Conclusion

For the reasons set forth above, the government respectfully requests that the Court accept the defendant's plea and impose a sentence of fifteen years' imprisonment.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: \_\_\_\_/s/_____
Seth D. DuCharme
Matthew Amatruda
Assistant United States Attorneys
(718) 254-6021/7012

cc: Steve Zissou, Esq.
Michael Bachrach, Esq.
Frank Marcigliano, U.S. Probation Department