1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

 - - - - - - - - - - - - -    X

UNITED STATES OF AMERICA,     :    11 CR 623

                              :


    -against-                 :
                                   United States Courthouse
                                   Brooklyn, New York
AGRON HASBAJRAMI,             :

                                   October 23, 2014
         Defendant.           :    2:30 o'clock p.m.

 - - - - - - - - - - - - -    X


            TRANSCRIPT OF CONFERENCE
            BEFORE THE HONORABLE JOHN GLEESON
            UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Government:           LORETTA E. LYNCH
                              United States Attorney
                              BY: SETH DuCHARME
                              Assistant United States Attorney
                              271 Cadman Plaza East
                              Brooklyn, New York


For the Defendant:            STEVE ZISSOU, ESQ.
                              MICHAEL BACHRACH, ESQ.


Court Reporter:               Gene Rudolph
                              225 Cadman Plaza East
                              Brooklyn, New York
                              (718) 613-2538


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.


            GR     OCR    CM    CRR    CSR
```

2

1        THE CLERK:  United States versus Agron Hasbajrami.
2        THE COURT:  Okay.  Welcome back.
3        Appearances, please.
4        MR. DuCHARME:  For the United States, Seth DuCharme.
5        Good afternoon, Your Honor.
6        THE COURT:  Good afternoon.
7        MR. ZISSOU:  Steve Zissou and Michael Bachrach
8   appear for Mr. Hasbajrami.
9        Good afternoon, Your Honor.
10       THE COURT:  Good afternoon.
11       Good afternoon.
12       Swear the interpreter, please.
13       THE CLERK:  Mr. Lushi, please raise your right hand.
14       (The interpreter duly sworn/affirmed.)
15       THE CLERK:  Please state your name for the record.
16       THE INTERPRETER:  Uk Lushi, Albanian court
17  interpreter.
18       MR. ZISSOU:  Judge, before --
19       THE COURT:  We have the right dialect?
20       THE DEFENDANT:  Yes.
21       THE COURT:  Okay.  Tosk, is that what it is called?
22       THE DEFENDANT:  Yes.
23       MR. ZISSOU:  Judge, may I make an observation before
24  you continue?
25       THE COURT:  Yes.

1           MR. ZISSOU:  Mr. Hasbajrami's English has improved
2  over the years.  He doesn't need a word-for-word
3  interpretation of the status conference.
4           THE COURT:  Okay.
5           MR. ZISSOU:  We have asked and we have encouraged
6  the Court to supply one because obviously the sensitive nature
7  of this case requires that he understands every word.  I think
8  it's okay for us to proceed without the interpreter and if
9  Mr. Hasbajrami doesn't understand a word, he will lean over to
10 one of us and ask for a slight interpretation, if that's okay
11 with Your Honor.
12          THE COURT:  Fine by me.
13          Fine by you?
14          THE DEFENDANT:  Yes, I agree.
15          THE COURT:  Okay.  Where in your view do we go from
16 here?
17          MR. DuCHARME:  In our view, Your Honor, your ruling
18 has put us back in the posture that we would be before the
19 defendant pled guilty.  I assume that the counts in the
20 indictment are all now live again and we are certainly
21 anticipating that the defense will make a motion to suppress
22 the fruits our FISA surveillance and that we will respond to
23 that and that we anticipate some CIPA litigation, as is common
24 in these types of cases, and we've started preparations to
25 engage in that litigation.

4

1       THE COURT:  Good.  I appreciate it.
2              Was there a superseder?
3       MR. DuCHARME:  There was a superseding indictment,
4  yes, Your Honor.
5       THE COURT:  There is?
6       MR. DuCHARME:  Yes.
7              I believe the first indictment I think may have been
8  one material support count or attempted material support.
9       THE COURT:  All right.
10      MR. DuCHARME:  We ended up with four.
11      THE COURT:  What is it, S-what?
12      MR. DuCHARME:  I think it's S-1.
13      THE COURT:  Okay.  Got it.
14             Provision of material support attempt in Count Two;
15  provision and attempted provision in Count Three; the same for
16  Count Four.
17             All right.  Mr. DuCharme accurately predict what's
18  next from your perspective?
19      MR. ZISSOU:  I believe he did, Judge.  In fact, I
20  just had to explain deja vu all over again to the client.  I
21  think we are back where we were when we first appeared before
22  Your Honor after he was arraigned in this case.
23      THE COURT:  One respect in which it is not deja vu
24  is the importance to me of the public interest in a speedy
25  resolution of -- every case is important, but this case, comes

1  as no surprise to anyone, is especially important, 2011.  I
2  say this only by way of letting you know, I am going to push
3  the case.  There is a public interest in resolving these.  I
4  am going to set a schedule.  Let me know what you think you
5  need in terms of your immediate motion schedule.  You are
6  going to get ready on the FISA stuff.  I am going to be
7  pushing this case harder than I would have back in 2011
8  because of the passage of time.
9           MR. ZISSOU:  I certainly appreciate that, Judge,
10 given the significance of the case and the time that it has
11 been pending and then re-pending.  Before you, I guess, make a
12 final decision, I would just ask you to let Mr. -- I mean, in
13 terms of how fast fast is, I suppose.
14          THE COURT:  All right.
15          MR. ZISSOU:  I am going to ask you to let
16 Mr. Bachrach be heard on the kind of motions we are likely to
17 be filing in this case and that will I think help you figure
18 out the schedule, if you will.
19          THE COURT:  All right.
20          MR. BACHRACH:  Yes, Your Honor.
21          As far as we can foresee it, there are potentially
22 four different motions to suppress that could be filed in this
23 case; a per se Fourth Amendment challenge to the FISA
24 amendments act; as applied, constitutional challenge to that
25 act; the as applied statutory challenge to the surveillance

1 that occurred in this case; that is, assuming it is
2 constitutional, was it actually applied correctly here; as
3 well as, Your Honor, potentially a motion, an entirely
4 separate motion to suppress his custodial statements, although
5 that one we still need to look at a little bit more since
6 obviously it hasn't been our focus for some time.
7       Additionally, Your Honor, since there were never any
8 motions filed in this case originally, since this case was
9 disposed of early on, procedurally at least, we would have to
10 then file new discovery motions under Rule 16 aimed at trial,
11 not the FAA issues, but primarily geared to the trial and
12 anything -- any other type of normal motions you would have.
13 But the abnormal motions really will be quite significant,
14 particularly with respect to the constitutionality, both
15 per se and as applied, of the FISA amendments act.
16       It's also worth noting, Your Honor, there may be
17 litigation, I have no way of predicting how long it would
18 take, but there may be litigation with respect to CIPA
19 disclosures. We have had some classified information turned
20 over in this case, as Your Honor knows. We don't believe it's
21 sufficient and I was planning on saying we are definitely
22 filing a motion in that regard. But having spoken with the
23 government, there is going to be an attempt at least made to
24 try to resolve that without having to file a motion. But if
25 it can't be resolved, then of course we have to file a

Section 5 motion under CIPA as well. How long that takes to litigate depends on factors that I can't even address because I don't know how long the government's Section 4 applications will take.

THE COURT: Do you want to be heard?

MR. DuCHARME: Not really, Judge. I have a pretty good idea where we are headed.

THE COURT: I envision two tracks of motions, one track that depends on the course and the outcome of the CIPA disclosures and the CIPA litigation and all these other motions. Then I could imagine at the far end of what you get under CIPA some motions that relate to the trial and maybe some in limine applications. That's the way I envision it.

Does anybody envision it differently?

MR. ZISSOU: No. I think the record is clear. I think we are all pretty much on the same page.

MR. BACHRACH: Yes, Your Honor.

THE COURT: I want all those non-CIPA motions filed. You tell me, you are the lawyer. The guilty plea has been withdrawn for awhile. I'm sure you've given it some thought. I want all those motions filed so we can get them briefed and argued. If the case survives them, we can get through CIPA and get this case tried on a timely basis.

How much time do you think you need to make those motions?

8

1  MR. ZISSOU:  The what I will call the garden variety
2  case motions?
3  THE COURT:  I don't know how garden variety they are
4  .  It might be an official challenge to the statute.  Most of
5  the motions your colleague described at the outset of his
6  remarks don't require the CIPA course to run.
7  MR. ZISSOU:  That is correct.
8  May I beg your indulgence for a moment, Judge?
9  THE COURT:  Yes.
10  (Pause.)
11  MR. ZISSOU:  We think 60 days is a fair amount.
12  THE COURT:  That's too long.  I am not going to give
13  you 60 days.  You are just going to have to get to work.  If
14  you need help with a research person, ask for it.  You are
15  going to have to get to work.  We are not going to wait
16  60 days to file those motions.
17  MR. ZISSOU:  Of course well comply with every
18  schedule you think is appropriate.  We'll, of course, submit a
19  supplemental budget, I think the first one was only related to
20  the civil proceeding.  So we will certainly do that as well.
21  If Your Honor sets a schedule and we think we need some help,
22  we will certainly ask for it.
23  THE COURT:  Submit your budget to Jerry Tritz in the
24  first instance.
25  MR. ZISSOU:  Of course.

GR       OCR       CM       CRR       CSR

1  THE COURT: Motions by November 26th, the day before
2  Thanksgiving. So you can enjoy your Thanksgiving weekend.
3  Then the government, December 24th.
4  MR. DuCHARME: Judge, may I be heard on that?
5  I know you are familiar with classified litigation,
6  having stood before you on several cases. There is something
7  a little different, frankly, about the suppression opposition
8  motion that we are going to have to file in this case. That
9  is, that in this case there is the lack, frankly, of the kind
10 of boiler plate and traditional arguments that we have relied
11 on in Title 1 FISA cases, that the defendants have identified
12 they are going to make a number of challenges to the
13 constitutionality of the statute, to the statute itself, on an
14 as applied basis and per se base is. I guess what I am
15 telling you, Your Honor, is we would hope to have more time
16 than what your schedule contemplates because we haven't really
17 done this before very often.
18 THE COURT: You are just going to have to write the
19 boiler plate for the next case.
20 MR. DuCHARME: I guess we will.
21 THE COURT: You are on the ground floor on this one.
22 I don't mean to be flip about it. Let's get the papers. If
23 after you get them on November 26th you are going to need more
24 time than a month to respond to them, make an application. We
25 will both have before us what it is your responding to.

1    MR. DuCHARME: Understood, Judge.

2    MR. ZISSOU: Judge, I think, and again, whatever
3 Your Honor directs of course we'll comply with, but I think
4 perhaps that schedule might be a little -- a little too --
5 perhaps you might want to give an extra ten days or so to the
6 front end of that. I don't think that really is a -- that is
7 going to be much of a burden. It's not going to I think
8 offend anyone's notions of speedy and fair justice in this
9 courthouse if you put a little -- ten days on. I usually work
10 over Thanksgiving anyway so I don't mind having stuff that we
11 need to go through a second or third time. If you added ten
12 days on that that will give Mr. DuCharme a little more time to
13 get his ducks in a row as well anticipating what we get. We
14 work well together. We send him drafts as we are going along
15 so he sees where we are going. We don't wait until the
16 midnight of the filing date to send him what we are working
17 on. We give him drafts and he understands they are drafts and
18 we change them and I think that gives everybody a little bit
19 more flexibility and, of course, as Your Honor has remarked,
20 this is an -- a case of national interest and national
21 importance. I think Your Honor has one of the early cases, so
22 what you decide here is likely to be reviewed all the way.
23 So --

24    THE COURT: Okay. I have thought about it. We will
25 stick with what I said and we will go January 9th for reply

1  papers and January 23rd for oral argument.
2           THE CLERK:  At 10:00 am.
3           THE COURT:  This is non-CIPA stuff.  What can I
4  expect from you with regard to the CIPA process?  When do I
5  get the Section 4 submission from the government?
6           MR. DuCHARME:  Your Honor, we are going to I think
7  work contemporaneously on both the CIPA issued and the FISA
8  issues.  I am starting a terrorism trial on February 2nd.  But
9  I am not the only AUSA in our office.  I would hope that we
10 could get you the CIPA filing in early March.
11          Does that seem reasonable?
12          THE COURT:  No.  That seems way too long.
13          MR. DuCHARME:  February?
14          THE COURT:  It's a 2011 case.  I am concerned about
15 that.
16          MR. DuCHARME:  Understood.
17          THE COURT:  I would be even if it were not a
18 terrorism case.  It's a jail case, 2011.  We have to move this
19 case.
20          MR. DuCHARME:  We will adjust to your schedule.  We
21 will drag in other resources.  If I am on trial, we will get
22 somebody else.
23          THE COURT:  Let's move that up so we can -- I was
24 hoping to get all the CIPA stuff behind us by March.
25          There is some symmetry to having the CIPA

12

Section 4 -- let's have it on the same day that your adversaries file their reply brief, which is January 9th.  You will have to bring in some people.  You all know me.  I'm very reasonable.

MR. ZISSOU:  Yes, Judge, you have that reputation.

THE COURT:  I am very reasonable.  I mean it about this.  He's in jail.  He has his plea back.  We are going to push his case.

MR. ZISSOU:  We get it.

MR. BACHRACH:  Your Honor, if I could just make a request on the record?

THE COURT:  Before you do?

MR. BACHRACH:  Sure.

THE COURT:  Does it make sense to set -- I guess we will just wait.  I will wait.  I will get that CIPA Section 4 and we will deal with what to do in terms of it resolving the rest of CIPA.

MR. DuCHARME:  To be clear on that, Judge, I don't think there is any harm in saying what we anticipate to come out of that CIPA process will be a summary substitution along the lines of what we've already turned over.

THE COURT:  Got it.  Maybe we should move the date up even further.

MR. DuCHARME:  Withdrawn.

MR. BACHRACH:  Only -- due to the passage of time

1  and it has been a lot of time and in fact -- it's not
2  something that the case has been around for a while.  The case
3  was actually closed for a while.
4          I just want to make a request that all of the
5  discovery be turned over a second time, a fresh set, to ensure
6  not we are not missing anything.
7          THE COURT:  Do it on your own time.  I understand
8  you get along real well.
9          MR. ZISSOU:  Judge, do you want to set another
10 status date just in case there are issues?
11         THE COURT:  No.  We have a motion schedule here.  I
12 will see you on January 23rd for oral argument.
13         MR. DuCHARME:  Judge, the case was previously
14 declared complex.  I assume that's still in effect in terms of
15 speedy trial?
16         THE COURT:  Absolutely.  Does dissent from that
17 view?
18         MR. BACHRACH:  No.
19         MR. ZISSOU:  No.
20         THE COURT:  Anything further?
21         MR. DuCHARME:  No.
22         MR. ZISSOU:  No.
23         THE COURT:  Have a good day.  Thank you.
24         (Matter concludes.)
25