**PRIORITY SEND**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

<u>CRIMINAL MINUTES – GENERAL</u>

Case No.    ED CR 12-00092-VAP                                        Date: July 7, 2014
===============================================================
PRESENT:  HONORABLE VIRGINIA A. PHILLIPS, UNITED STATES DISTRICT JUDGE

| Marva Dillard | None Present | Susan J. Dewitt |
| Deputy Clerk | Court Reporter | Christopher D. Grigg |
| | | Allen W. Chiu |
| | | Asst. U.S. Attorneys |
| | | Not Present |

===============================================================
U.S.A. vs (Defendants listed below)           Attorneys for Defendants

(1) SOHIEL OMAR KABIR                        (1) Jeffrey Aaron, Angela Viramontes,
(2) RALPH KENNETH DELEON                          Matthew Larsen, DFPDs
                                             (2) David J. Thomas, CJA

        Not Present                                Not Present

_____

**PROCEEDINGS:   MINUTE ORDER GRANTING IN PART MOTION TO EXCLUDE
                 TESTIMONY OF EVAN KOHLMANN (DOC. NO. 253) (IN CHAMBERS)**

    On September 9, 2013, the Government filed its Preliminary Notice of Expert Witnesses (Doc. No. 181) ("Preliminary Notice"), providing a summary of, <u>inter alia</u>, the intended expert testimony of Evan Kohlmann who specializes in "Islamic terrorism."  On April 7, 2014, Defendant Sohiel Omar Kabir ("Defendant") filed a Motion to Exclude Testimony of Evan Kohlmann (Doc. No. 253) ("Motion"), joined by Codefendant Ralph Kenneth Deleon (Doc. No. 265).   The Government filed an Opposition to the Motion (Doc. No. 261) ("Opposition") on April 14, 2014.  Defendant filed a Reply to the Opposition (Doc. No. 265) on April 21, 2014.  On June 27, 2014, the Government filed a Supplemental

EDCR12-92-VAP
UNITED STATES v. SOHIEL OMAR KABIR, et al.
MINUTED ORDER of July 7, 2014

Submission in Support of Daubert Hearing for Evan Kohlmann (Doc. No. 383) ("Supplement").

In the Motion, Defendant asks the Court to limit Kohlmann's testimony because it cannot satisfy the requirements of Federal Rule of Evidence ("FRE") 702, and to "conduct an evidentiary Daubert hearing requiring the presence of Mr. Kohlmann for examination by the defense." (Mot. at 1-5.) Defendant also asserts Kohlmann's proposed testimony regarding the profile of "homegrown terrorists," and whether Defendant fits that profile, is inadmissible because (1) profile testimony is prohibited in criminal cases in the Ninth Circuit, (2) Kohlmann is not qualified to testify regarding a "homegrown terrorist" profile, (3) Kohlmann's methodology regarding profiling is not reliable, and (4) Kohlmann's testimony concerning the global jihadi movement will not be helpful to the jury and will be unduly prejudicial. (Id. at 5-13.)

In the Opposition, the Government argues a Daubert hearing is not necessary as Kohlmann's testimony is reliable, relevant, and not prejudicial, meeting all the requirements of FRE 702. (Opp'n at 5-11.) The Government also argues Kohlmann's testimony is unlike other profiling testimonies barred by the Ninth Circuit, as "the profile factors utilized by Mr. Kohlmann are very narrow, specific, and do not include innocuous events and, thus, it is not likely that innocent citizens will be included within the profile, nor that the profile will be applied in a racially discriminatory manner." (Id. at 12-13.) The Government thus asserts a Daubert hearing is not required to establish the admissibility of Kohlmann's testimony. (Id. at 13-14.)

On April 28, 2014, the Court issued an Order indicating its inclination to find that Kohlmann is qualified to testify as an expert on terrorism, but expressing concerns about Kohlmann's proposed testimony regarding a "home-grown terrorist" profile. (April 28, 2014 Order (Doc. No. 275) at 2-3.) In particular, the methodology, employed to create the profile, the application of the profile, its relevance to this case, and the potential for unfair prejudice, confusion, and needless presentation of cumulative evidence raised issues such that a Daubert hearing would assist the Court in developing the record further. (Id.)

On July 1, 2014, the Court held a Daubert hearing on Kohlmann's proposed testimony. In anticipation of the hearing, the Government submitted the Supplement on June 27, 2014, providing an overview of Kohlmann's hearing testimony, and arguing for certain parameters to the hearing. (Supp. at 2-7.) At the hearing, counsel for the Government and Kabir examined Kohlmann, with a focus on the methodology and application of Kohlmann's "homegrown terrorist" profile.

EDCR12-92-VAP
UNITED STATES v. SOHIEL OMAR KABIR, et al.
MINUTE ORDER of July 7, 2014

After considering the papers submitted in support of, and in opposition to, the Motion, as well as the testimony of Evan Kohlmann and arguments advanced by counsel at the July 1, 2014 Daubert hearing, the Court GRANTS IN PART the Motion, as follows.

Rule 702 of the Federal Rules of Evidence permits admission of "scientific, technical or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  The expert witness's testimony also must be "based on sufficient facts or data," "the product of reliable principles and methods," and the product of a reliable application of the principles and methods to the facts of the case. Id.  A trial judge has a "gatekeeping" obligation with respect to opinion testimony of experts. Daubert v. Merrell Dow Pharms., 509 U.S. 579, 589 (1993).  "[T]he trial judge must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Id.  All forms of expert testimony, not just scientific testimony, are subject to the trial court's gatekeeping role. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-149 (1999); White v. Ford Motor Co., 312 F.3d 990, 1007 (9th Cir. 2002) (finding that the trial judge is required to "apply his gatekeeping role . . . to all forms of expert testimony, not just scientific testimony").

In its Preliminary Notice, the Government proposes that Kohlmann testify on (1) the history and context of the Al-Qa'ida, the Taliban in Afghanistan, and Islamic extremism, (2) the use of social media by terrorist organizations, (3) the definition of terms, concepts, and phrases used in this context, and (4) the six-factor profile of a "homegrown terrorist" network.[1] (Prelim. Not. at 4-18; Supp. at 5.)  The Government proposes that Kohlmann be permitted to "testify that the factors and indicators the defendants [in this case] exhibit are consistent with and closely fit factors exhibited by 'homegrown terrorist[s]' or 'contemporary violent extremists.'" (Id. at 18-20.)

---

[1] According to the Government, the six factors, developed by Kohlmann, are: (1) "[t]he formulation of self-selecting schemes aimed at traveling abroad to join foreign terrorist organizations, attending training camps, and/or achieving imminent acts of physical violence"; (2) "[t]he acquisition of weapons and paramilitary training manuals, and the establishment of makeshift training camps"; (3) "[t]he adoption of a hardline sectarian religious perspective, often identified with the 'Salafi-Jihadi' or 'Takfiri' school"; (4) "[t]he use of coded language and attempts at logistical subterfuge (i.e., attempts to secret or hide one's activities)"; (5) "[t]he deliberative collection and/or redistribution of terrorist propaganda; and (6) "[t]he browsing of internet websites run by or on behalf of international terrorist organizations." (Supp. at 4; see also Prelim. Not. at 9.)

CR-11 (09/98)                                                                                      Initials of Deputy Clerk ___md___
CRIMINAL MINUTES - GEN                          Page 3

EDCR12-92-VAP
UNITED STATES v. SOHIEL OMAR KABIR, et al.
MINUTE ORDER of July 7, 2014

    In its April 28, 2014 Order, the Court found Kohlmann is qualified by his training and experience in international terrorism, with a focus on Islamic extremism, to testify as an expert on (1) the history and context of the Al-Qa'ida, the Taliban in Afghanistan, and Islamic extremism (or as Kohlmann characterizes it, the "global jihadi movement"), (2) the use of social media by Islamic terrorist organizations, and (3) the terms, concepts, and phrases used in this context.  (See Prelim. Not. Ex. A (Resume of Evan Kohlmann).)  Kohlmann's testimony on these subjects may help the jury understand the definitions, significance, and context of various names, organizations, terms, and practices that are important to the Government's theory of its case.

    As for the six-factor profile of a "homegrown terrorists" or "contemporary extremists" and the application of this profile to the defendants in this case, Defendant has extensively challenged Kohlmann's qualification to opine on the profile and the reliability of Kohlmann's methodology in constructing the profile, in the Motion and the Reply, and at the Daubert hearing.  (See Mot. at 6-11; Reply at 2-5.)  In particular, Defendant has argued Kohlmann's methodology is unreliable because Kohlmann, despite his claim of being a social scientist, does not employ any established or recognized social science mechanisms to control biases and error, but relies heavily on direct, personal observation of open source materials.  (See Mot. at 7-11; Reply at 2-5.)  In response, the Government has asserted that Kohlmann's "comparative analysis" methodology of gathering information from identifiable sources, including original materials from terrorist groups, and comparing and cross-checking the materials to create and refine his "homegrown terrorist" profile is a reliable social science methodology, and the profile is a reliable and appropriate tool for this case.  (See Opp'n at 7-9.)

    The Court is not persuaded that Kohlmann's methodology of constructing and maintaining the "homegrown terrorist" profile is reliable, and that the application of the profile to this case is relevant, helpful, and not confusing or prejudicial.  After the Daubert hearing, the Court remains concerned that, while Kohlmann has amassed an impressive collection of materials relating to international terrorism, he is unfamiliar with basic terms and theories of social science research (such as "variable," "attribute," "operational definition," and "grounded theory"), he has not submitted the profile and its application for rigorous peer review (despite his claim that it presents a reliable theory of identifying "homegrown terrorists"), and he does not employ recognized social scientific tools (such as random sampling and blind tests) to control for bias or error.  Thus, the Court finds the Government has not sufficiently shown Kohlmann's methodology of constructing and refining the "homegrown terrorist" profile to be reliable.  Furthermore, under FRE 403, the Court finds any probative value of the profile and its application to this case will be

```
EDCR12-92-VAP
UNITED STATES v. SOHIEL OMAR KABIR, et al.
MINUTE ORDER of July 7, 2014
```

substantially outweighed by the unfair prejudice, confusion, and misleading of the jury that likely will result from the presentation of Kohlmann's testimony on this subject.

Given this finding of lack of reliability and prejudicial nature of the profile, Kohlmann may not testify about the profile or its application to this case or another case. He also may not refer to the "homegrown terrorist" or "contemporary extremist" profile.

In sum, the Court permits Kohlmann to testify on (1) the history and context of the Al-Qa'ida, the Taliban in Afghanistan, and Islamic extremism (or the "global jihadi movement"), (2) the use of various social and internet media by Islamic terrorist organizations, and (3) the terms, concepts, and phrases used in this context. Kohlmann may not testify about the "homegrown terrorist" or "contemporary extremist" profile and its application to this case.

For the foregoing reasons, the Court GRANTS IN PART Defendant's Motion to Exclude Testimony of Evan Kohlmann (Doc. No. 253).

**IT IS SO ORDERED.**