UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                             :

UNITED STATES OF AMERICA,         :

                                             :

          *– against –*          :     11 Cr. 623 (JG)

                                           :     (Filed Electronically)

AGRON HASBAJRAMI,           :

                                           :

               Defendant.       :

                                           :

-------------------------------------------------------x

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AGRON HASBAJRAMI'S MOTION TO RELEASE UNREDACTED VERSION OF OPINION ISSUED BY THE HONORABLE JOHN GLEESON

JOSHUA L. DRATEL
Joshua L. Dratel, P.C.
29 Broadway, Suite 1412
New York, New York 10006

MICHAEL BACHRACH
276 Fifth Avenue
Suite 501
New York, NY 10001

STEVE ZISSOU
Steve Zissou & Associates
42-40 Bell Blvd., Suite 302
Bayside, NY 11361

*Attorneys for Defendant Agron Hasbajrami*

**Introduction**

This Memorandum of Law is submitted on behalf of defendant Agron Hasbajrami in support of his motion to release to his security-cleared counsel an unredacted version of the March 8, 2016, opinion (hereinafter "Opinion"), issued by Judge John Gleeson, denying Mr. Hasbajrami's motion to suppress the fruits of electronic surveillance conducted pursuant 50 U.S.C. §1881a [also known as Section 702 of the FISA Amendments Act (hereinafter "FAA")] (Docket # 165).[1]

As detailed below, Mr. Hasbajrami is presently appealing that decision denying his motion, and cannot do so effectively if his counsel, which possess the requisite security clearance to review the unredacted opinion, is denied access to the full opinion.  Indeed, it is entirely antithetical to the adversary process that the basis for a court's ruling be available to only one party to an action (as well as to the court), and that unfairness is amplified in the context of a criminal prosecution.

Mr. Hasbajrami does not himself seek access to the unredacted opinion;  nor does he seek public dissemination of it.  Rather, for the reasons set forth below, he merely seeks to have his appeal heard on a level playing field, on which the government does not possess an informational advantage both factually and legally, and on which his counsel's ability to present his appeal is not correspondingly, and materially, impaired.

Moreover, as set forth below, defense counsel's access to the redacted portions – ostensibly classified – can be achieved consistent with both the purpose and procedures of the Classified Information Procedures Act, which controls the use of classified information in federal

---

[1]  "FISA" denotes the Foreign Intelligence Surveillance Act, 50 U.S.C. §1801 *et seq*.

criminal cases.

According, it is respectfully submitted that Mr. Hasbajrami's motion to provide his security-cleared counsel access to the redacted portions of the Opinion be granted.  Also, because Judge Gleeson is no longer a member of the Court, the case needs to be reassigned.

### Statement of the Facts

The procedural history of the case is set forth in Judge Gleeson's opinion at 1, 3-5.  The history of the Foreign Intelligence Surveillance Act (hereinafter "FISA") and the FAA, and Section 702 in particular, is also discussed in the Opinion, at 6-13.  As noted in the Opinion, during the course of litigating the suppression motion, defense counsel sought, but were denied, access to the underlying applications and supporting materials for the FISA interception orders, and/or those orders themselves.  *Id*., at 26-27.

Judge Gleeson's opinion denying Mr. Hasbajrami's motion to suppress included two redacted lines and/or words.  *See* Opinion, at 21-22, 24.  Those redactions occur not only in the version of the Opinion published on the ECF system, but also in the version provided defense counsel, all of whom possess security clearances, and were privy to classified discovery during the case.  However, the government has had access to the full, unredacted version of the Opinion.

This motion seeks disclosure of the redacted passages of the Opinion to Mr. Hasbajrami's security-cleared defense counsel.

2

**ARGUMENT**

**THE COURT SHOULD ORDER DISCLOSURE
OF THE REDACTED PASSAGES OF THE
OPINION TO CLEARED DEFENSE COUNSEL**

It is axiomatic that any and every portion of a judicial opinion is essential to evaluation of that opinion upon appeal.  When one party is denied access to words or passages in an opinion, that party's ability to challenge it is impaired immeasurably, and irremediably.  Indeed, because counsel who are denied access do not even know what has been concealed, they cannot articulate specific prejudice.

As discussed below, in the FISA context, the presumptive *ex parte* proceedings and submissions are grounded in statute.  However, once a court determines the issues pertinent to FISA electronic surveillance, the redaction of material in a court's decision – denying even defense counsel with requisite security clearance the ability to review the bases for the court's conclusions – amplifies the impediment erected by the initial *ex parte* process.

Here, too, the redactions compound the government's original deliberate, improper non-disclosure of the FAA surveillance of Mr. Hasbajrami in the first place, *see* Opinion, at 26-27, and further insulates such concealment from accountability through the courts.[2]

**A.      *The Vertical Playing Field Created By* Ex Parte *FISA and FAA Proceedings***

Litigation of FISA-authorized electronic surveillance generally, and FAA-authorized electronic surveillance in particular in this case, represents a radical departure from the

---

[2]  Even beyond this case, the government's withholding of notice of electronic surveillance is now widespread.  *See generally* Patrick C. Toomey & Brett Max Kaufman, *The Notice Paradox: Secret Surveillance, Criminal Defendants, & the Right to Notice*, 54 Santa Clara L. Rev. 843, 865–895 (2014).

traditional and essential requirement of the adversary process.[3]  While ordinary search and even electronic surveillance warrants (issued pursuant to Title III) are presented initially *ex parte*, once criminal charges are instituted defense counsel and the defendant are afforded access to the underlying submissions in support of those warrants.

However, FISA and FAA applications (and supporting documents) are not shared with the defendant or defense counsel – even defense counsel, such as those in this case, in possession of the requisite security clearance to review classified material.  While FISA includes provisions that authorize disclosure "under appropriate security procedures and protective orders" – either because "such disclosure is necessary to make an accurate determination of the legality of the surveillance[,]" §1806(f), or "to the extent that due process requires discovery or disclosure[,]" §1806(g) – only one court has ever ordered such disclosure – only to be reversed on appeal.  *See United States v. Daoud*, ___ F. Supp.2d ___, 2014 WL 321384 (N.D. Ill. January 29, 2014), *rev'd* 755 F.3d. 479 (7th Cir. 2014).

The entirely one-sided nature of FISA litigation, particularly in the context of determining whether the government adhered to the restrictions set forth in §1881a, applies not only to the

---

[3]  As stated in the Congressional Research Service's Report, *Reform of the Foreign Intelligence Surveillance Courts:  Introducing a Public Advocate*,

> [a]n underlying principle of the Anglo-American legal system is the adversarial process, whereby attorneys gather and present evidence to a generally passive and neutral decision maker.  The basic assumption of the adversarial system is that a "sharp clash of proofs presented" by opposing advocates allows a neutral judge to best resolve difficult legal and factual questions.

Andrew Nolan, Richard M. Thompson II, and Vivian S. Chu, *Reform of the Foreign Intelligence Surveillance Courts: Introducing a Public Advocate*, Congressional Research Service, March 21, 2014, at 2 (available at <http://fas.org/sgp/crs/intel/R43260.pdf>).

facts at issue, as only the government knows the facts specific to the FAA electronic surveillance and interception with respect to Mr. Hasbajrami, but also to *the law* as well, as the government has enjoyed access to the entire body of opinions issued by the Foreign Intelligence Surveillance Court ("FISC"), and the Foreign Intelligence Court of Review ("FISCR"), while defense counsel's access is limited to those few opinions the government or the court has released publicly – and even all but one of those was disseminated only after the disclosures made by Edward Snowden. *See* Spencer Ackerman, "Fisa judge: NSA disclosures triggered important spying debate, *The Guardian* (Sept. 13, 2013), available at <https://www.theguardian.com/world/2013/sep/13/edward-snowden-nsa-disclosures-judge>.

This decidedly unlevel playing field – indeed, it is vertical, with the government at the apex and defense counsel at the bottom – has clear implications, not the least of which is the government's undefeated (and unsurprising, in light of the advantages inherent in *ex parte* litigation) record in FISA litigation in the statute's 38-year history. Also, it imposes upon the Circuit Court a responsibility – review of the FISA or FAA submissions as, in effect, surrogate defense counsel – to which courts have acknowledged it is not sufficiently suited to fulfill.

As the Supreme Court recognized in *Dennis v. United States*, 384 U.S. 855 (1966), "[i]n our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Id.*, at 875; *see also Franks v. Delaware*, 438 U.S. 154, 169 (1978) (permitting adversarial proceeding on showing of intentional falsehood in warrant affidavit because the magistrate who approves a warrant *ex parte* "has no acquaintance with the information that may contradict the good faith and reasonable

5

basis of the affiant's allegations").[4]

## B.      Ex Parte *Proceedings Are Exceedingly Disfavored*

As a threshold matter, *ex parte* proceedings are exceedingly disfavored.  As the Sixth

Circuit has cautioned, "[d]emocracies die behind closed doors."  *Detroit Free Press v. Ashcroft*,

303 F.3d 681, 683 (6th Cir. 2002).  As the Ninth Circuit has observed, "ex parte proceedings are

anathema in our system of justice."  *Guenther v. Commissioner of Internal Revenue*, 889 F.2d

882, 884 (9th Cir. 1989), *appeal after remand*, 939 F.2d 758 (9th Cir. 1991).

By their very nature, *ex parte* proceedings impair the integrity of the adversary process

and the criminal justice system.  As the Supreme Court has recognized, "'[f]airness can rarely be

obtained by secret, one-sided determination of facts decisive of rights. . . .  No better instrument

has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of

the case against him and opportunity to meet it.'"  *United States v. James Daniel Good Real*

*Property, et. al.*, 510 U.S. 43, at 55 (1993) (in absence of exigent circumstances, due process

clause requires government to provide notice and meaningful opportunity to be heard before

seizing real property subject to civil forfeiture), *quoting Joint Anti-Fascist Refugee Committee v.*

_____

[4] As the District Court in *United States v. Marzook*, 412 F. Supp.2d 913 (N.D. Ill. 2006), also a case involving terrorism-related charges, explained in the context of deciding whether to close a suppression hearing to the public because of the potential revelation of classified information thereat,

> [i]t is a matter of conjecture whether the court performs any real judicial function when it reviews classified documents in camera. Without the illumination provided by adversarial challenge and with no expertness in the field of national security, the court has no basis on which to test the accuracy of the government's claims.

*Id.*, at 921, *quoting Stein v. Department of Justice & Federal Bureau of Investigation*, 662 F.2d 1245, 1259 (7th Cir. 1981).

*McGrath*, 341 U.S. 123, 170-72 (1951 (Frankfurter, J., *concurring*), *quoting Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-72 (1951) (Frankfurter, J., *concurring*).  *See also United States v. Madori*, 419  F.3d 159, 171 (2d Cir. 2005), *citing United States v. Arroyo-Angulo*, 580 F.2d 1137, 1145 (2d Cir. 1978) (closed proceedings "are fraught with the potential of abuse and, absent compelling necessity, must be avoided") (other citations omitted).[5]

Similarly, in *United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004), the Second Circuit reemphasized the importance of open, adversary proceedings, declaring that "[p]articularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other."  389 F.3d at 322-23 [*citing McGrath*, 341 U.S. at 171 n. 17 (Frankfurter, J., *concurring*), which noted that "the duty lying upon every one who decides anything to act in good faith and fairly listen to both sides . . . always giving a fair opportunity to those who are parties in the controversy for correcting or contradicting any relevant statement prejudicial to their view") (citation and internal quotation marks omitted).  *See also* 389 F.3d at 321 ("[e]x parte submissions may generally *not* be received in opposition to bail release because such submissions compromise both a defendant's due process right to a fair hearing and the public's interest in open criminal proceedings").

Specifically in the Fourth Amendment context, including in relationship to electronic surveillance, the Supreme Court has twice rejected the use of *ex parte* proceedings on grounds

---

[5]  Conversely, as Judge Learned Hand stated in *United States v. Coplon,* 185 F.2d 629, 638 (2d Cir. 1950), "[f]ew weapons in the arsenal of freedom are more useful than the power to compel a government to disclose the evidence on which it seeks to forfeit the liberty of its citizens."

that apply equally here.  In *Alderman v. United States*, 394 U.S. 65 (1969), the Court addressed the procedures to be followed in determining whether government eavesdropping in violation of the Fourth Amendment contributed to the prosecution case against the defendants.

The Court rejected the government's suggestion that the district court make that determination *in camera* and/or *ex parte*, and observed that

> [a]n apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances.

*Id*. at 182.

In ordering disclosure of improperly recorded conversations, the Court declared:

> [a]dversary proceedings will not magically eliminate all error, but they will substantially reduce its incidence by guarding against the possibility that the trial judge, through lack of time or unfamiliarity with the information contained in and suggested by the materials, will be unable to provide the scrutiny that the Fourth Amendment exclusionary rule demands.

*Id*. at 184.

Likewise, the Court held in *Franks v. Delaware*, 438 U.S. 154 (1978), that a defendant, upon a preliminary showing of an intentional or reckless material falsehood in an affidavit underlying a search warrant, must be permitted to attack the veracity of that affidavit.  The Court rested its decision in significant part on the inherent inadequacies of the *ex parte* nature of the procedure for issuing a search warrant, and the contrasting enhanced value of adversarial proceedings:

8

> the hearing before the magistrate [when the warrant is issued] not
> always will suffice to discourage lawless or reckless misconduct.
> The pre-search proceeding is necessarily *ex parte*, since the subject
> of the search cannot be tipped off to the application for a warrant
> lest he destroy or remove evidence.  The usual reliance of our legal
> system on adversary proceedings itself should be an indication that
> an *ex parte* inquiry is likely to be less vigorous.  The magistrate has
> no acquaintance with the information that may contradict the good
> faith and reasonable basis of the affiant's allegations.  The pre-
> search proceeding will frequently be marked by haste, because of
> the understandable desire to act before the evidence disappears;
> this urgency will not always permit the magistrate to make an
> independent examination of the affiant or other witnesses.

438 U.S. at 169.

The same considerations that the Supreme Court found compelling in *Alderman* and

*Franks* militate against *ex parte* procedures in this appeal.  After all, denying an adversary access

to the facts and/or legal bases for a lower court decision constitutes an advantage as powerful and

insurmountable as exists in *any*, much less appellate, litigation.

Conversely, the lack of access to specific facts categorically impairs the ability of a

defendant (or his counsel, even cleared counsel) to establish non-compliance with the strictures

of §1881a.  For example, the factual background of this pleading can only be based on

assumptions from the public record, including a heavily redacted 2011 FISC opinion and

testimony before the Privacy and Civil Liberties Oversight Board (hereinafter "PCLOB") at a

March 19, 2014, public hearing.[6]

---

[6]  The PCLOB is a an independent, bipartisan agency within the executive branch whose
members are appointed by the President and confirmed by the Senate. PCLOB, *Report on the
Telephone Records Program Conducted under Section 215 of the USA PATRIOT Act and on the
Operations of the Foreign Intelligence Surveillance Court*, 2 (Jan. 23, 2014).  The PCLOB
conducted a public hearing March 19, 2014, at which the General Counsels of the Federal Bureau
of Investigation, the National Security Agency, and the Director of National Intelligence, as well
as the Deputy Assistant Attorney General for the Department of Justice's National Security

However, courts have recognized that when defense counsel is compelled to argue in a vacuum devoid of a factual context to which only the government and the court have access, a defendant's burden must be alleviated.  As the Fourth Circuit has recognized in a closely analogous context – discerning what exculpatory evidence a witness solely within the government's control, and to whom the defense is denied access, can provide – when a defendant is deprived of such access, the burden to be specific with respect to the material in question must be relaxed accordingly.  *See United States v. Moussaoui*, 382 F.3d 453, 472 (4th Cir. 2004), *citing United States v. Valenzuela-Bernal*, 458 U.S. 858, 870-71, 873 (1982).

Here, that adjustment applies, as Mr. Hasbajrami and his cleared counsel are compelled to operate in a system in which the admissibility of  evidence at the core of the government's case – in this case, in effect the *entirety* of the government's case – is decided on the basis of a secret body of facts *and* law to which even cleared defense counsel is denied access.

Accordingly, it is respectfully submitted that the Court should order disclosure to cleared defense counsel the full unredacted Opinion, which will enable the Court to render its decisions

---

Division, provided testimony about programs operated under §1881a.  *See Public Hearing Regarding the Surveillance Program Operated Pursuant to Section 702 of the Foreign Intelligence Surveillance Act Before The PCLOB* (2014) (transcript available at <http://www.pclob.gov/Library/Meetings-Events/2014-March-19-Public-Hearing/19-March-2014_Public_Hearing_Transcript.pdf>).

Nonetheless, even the PCLOB information is of limited value because, *inter alia*:  the witnesses did not purport to provide information regarding the protocols and practices in effect at the time of the surveillance in this case, which was probably from 2010-2011;  the information provided was limited to declassified material;  and the testimony was not under oath, not from individuals with first hand knowledge, and not subject to more than very limited questioning.

with full participation by defense counsel consistent with the principles of the adversary system.[7]

**C.**     ***The Classified Information Procedures Act Provides a Mechanism for Disclosure to Security-Cleared Defense Counsel Consistent With Due Process and National Security***

Nor does the classified nature of the redacted material foreclose access by security-cleared defense counsel.  Indeed, the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. 3 (2000), was designed to regulate the use of classified material in federal criminal prosecutions, and to create a system through which defense counsel would gain access to classified information and materials pertinent to the case.

The express purpose of CIPA is to protect sensitive national security information, and not to impede a defendant's rights.  *See United States* v. *Stewart,* 590 F.3d 93, 130 (2d Cir. 2009); *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) (government's privilege under CIPA "must give way" when classified information is helpful or material to the defense).  *See also United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) (citation omitted).

In fact, in enacting CIPA, Congress warned that "the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without the Act."  S. Rep. No. 96-823, at 9 (1980).  *See also, e.g., United States v. Poindexter*, 698 F. Supp. 316, 320 (D.D.C. 1988).

Yet without defense counsel's participation in the process of evaluating the *entire* opinion, how can the defendant be said to have been placed in the same position as he would if he enjoyed access to the redacted portions of the Opinion?

_____

[7]   *See* Hon. James G. Carr, Op-Ed, "A Better Secret Court," *The New York Times*, July 23, 2013, available at <http://www.nytimes.com/2013/07/23/opinion/a-better-secret-court.html?ref=opinion&_r=1&>.

11

Also, *ex parte* proceedings with respect to appeals also present an overwhelming danger of erroneous decisions.  The Circuit Court cannot, despite its best efforts, properly function as Mr. Hasbajrami's surrogate advocate, particularly with respect to the critical factual and legal issues in this case, which is considerably more complicated than an ordinary case both factually and legally, thus irremediably impairing further a court's ability to play the role of defense counsel.

As the Ninth Circuit observed in the closely analogous context of a secret evidence case, "'[o]ne would be hard pressed to design a procedure more likely to result in erroneous deprivations.' . . .  [T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error."  *American-Arab Anti-Discrimination Committee v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995) (*quoting* District Court); *see, e.g., id.* at 1070 (noting "enormous risk of error" in use of secret evidence); *Kiareldeen v. Reno*, 71 F. Supp. 2d 402, 412-14 (Dist. N.J. 1999) (same).

In addition, courts necessarily lack familiarity with "the information contained in and suggested by the materials[,]" *see Alderman*, 394 U.S. at 184, that the Opinion withholds.  The Circuit Court, which has not had opportunity to review the discovery, or consult with the defense, cannot be expected to surmise the factual and legal nuances, or implications, of the redacted portions.  *See also* **ante**, at 4-6.

Moreover, while defense counsel have always been aware that they were operating at an insurmountable disadvantage by being denied access to the FISA applications or the underlying supporting documents (unlike any other situation in which the government seizes evidence pursuant to warrant), only recently – since the disclosures by Edward Snowden, which

precipitated the publication of several FISC opinions – has it been revealed that there has existed

for more than a decade a growing body of *law*, in the form of opinions by the FISC and FISCR,

that have been available to government counsel, but *not* to even security-cleared defense counsel.

That represents an additional inequity impairing defense counsel's ability to present Mr.

Hasbajrami's appeal effectively, which would only be aggravated by maintaining *ex parte*

redactions in the opinion from which he is appealing.

The reviewing Court will see the redacted sections, and the government already knows

their contents.  However, unless defense counsel are permitted to review the redacted portions,

only the defense, the party possessing constitutional rights, and whose counsel hold the

appropriate security clearance(s), will be denied the ability to confront the Opinion as it exists in

its entirety.  *Cf. United States v. Hsu*, 155 F.3d 189, 204-05 (3d Cir. 1998) (neither the Court nor

the parties had seen the redacted information, which was arguably related to a defense the Court

ruled was not legally viable);  *United States v. Monserrate*, 2012 WL 33900 (U.S. Air Force

Court of Criminal Appeals July 10, 2012), at *2 (redacted information was not relevant to

preparation of defense and therefore need not be shared with defense counsel).

**Conclusion**

Accordingly, it is respectfully submitted that Mr. Hasbajrami's motion to provide his security-cleared counsel access to the redacted portions of the Opinion be granted.

Dated: 25 July 2016
New York, New York

Respectfully submitted,

 /S/ Joshua L. Dratel
JOSHUA L. DRATEL
JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707

MICHAEL K. BACHRACH
276 Fifth Avenue
Suite 501
New York, NY 10001

STEVE ZISSOU
Steve Zissou & Associates
42-40 Bell Blvd., Suite 302
Bayside, NY 11361

*Attorneys for Defendant Agron Hasbajrami*

– Of Counsel –

Joshua L. Dratel
Michael K. Bachrach

14