SDD/SK/PWB
F.#2011R00783

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

− − − − − − − − − − − − − − − − − X

UNITED STATES OF AMERICA

   - against -                             No. 11-CR-623 (S-1) (DLI)

AGRON HASBAJRAMI,

       Defendant.

− − − − − − − − − − − − − − − − − X

THE GOVERNMENT'S OPPOSITION
TO THE DEFENDANT'S MOTION TO DISCLOSE CLASSIFIED INFORMATION

ROBERT L. CAPERS
United States Attorney
Eastern District of New York

Seth D. DuCharme
Saritha Komatireddy
Peter W. Baldwin
Assistant U.S. Attorneys
Eastern District of New York

PRELIMINARY STATEMENT

The government respectfully submits this opposition to the defendant's motion for an un-redacted version of the Memorandum and Order issued by former United States District Judge John Gleeson, which was publicly filed on the docket in the above-captioned matter on March 8, 2016.   This case arises from the defendant's efforts to join a group of international terrorists.  The defendant was stopped by members of the New York Joint Terrorism Task Force, who relied in part on electronic surveillance to detect and disrupt the defendant's plans.  During pretrial litigation in this matter, the defendant moved to suppress all evidence obtained or derived from surveillance conducted pursuant to Section 702 of the FISA Amendments Act of 2008 ("FAA"), codified at 50 U.S.C. § 1881a.  (See Dkt. No. 92). After extensive briefing and oral argument, Judge Gleeson denied the defendant's motion to suppress and noted that an opinion would follow.  (See Dkt. Entry dated Feb. 20, 2015).  The defendant subsequently pled guilty to providing and attempting to provide material support to terrorists, in violation of Title 18, United States Code, Section 2339A, and conspiring to provide material support to terrorists, in violation of Title 18, United States Code, Section 371.  (See Dkt. No. 142).  The plea was pursuant to an agreement that preserved the defendant's right to appeal Judge Gleeson's denial of the motion to suppress the fruits of FAA surveillance.  Judge Gleeson subsequently sentenced the defendant to sixteen years' imprisonment.  (See Dkt. No. 152).  The defendant then filed an appeal in the Second Circuit (which is currently stayed).

On February 18, 2016, Judge Gleeson provided to the Classified Information Security Officer a full, un-redacted, and presumptively classified version of his opinion (the

1

"Opinion").  (Dkt. Entry dated Feb. 23, 2016).  Judge Gleeson also issued a final unclassified and lightly redacted version of the Opinion on the public docket.  (<u>See</u> Dkt. No. 165). Thereafter, Judge Gleeson departed the judiciary.

On July 25, 2016, in connection with the pending appeal, the defendant moved for the release of an un-redacted version of Judge Gleeson's Opinion to counsel.  The defendant's motion repeats arguments that were previously raised and rejected in this matter, and asks this Court to second-guess determinations already made by Judge Gleeson.  The defendant's arguments are without merit.

BACKGROUND

Beginning in 2010 and continuing through 2011, the defendant sent money to an individual overseas with the intent that the funds be used to support the activities of a jihadist fighting group in the Federally Administered Tribal Areas of Pakistan (the "FATA"). The FATA region of Pakistan was home to multiple prominent Islamic terrorist organizations including al-Qaeda, the Islamic Jihad Union, and Tehrik-i-Taliban Pakistan.  The individual overseas represented to the defendant and others that he was fighting against Americans and other westerners and that he had facilitated the travel of numerous individuals to the FATA region to participate in violent jihad.  The defendant took steps to travel to the FATA region himself, with the intent of fighting and dying as a martyr, and discussed such travel with the individual overseas and others.  The defendant discussed travel logistics and routes and the need to bring money with him to purchase a weapon.  On September 5, 2011, the defendant bought a one-way ticket to Istanbul, Turkey -- the first stop en route to the FATA -- on a flight scheduled to depart the next day.  The next day, the defendant emptied his bank account by withdrawing all of the remaining funds as cash and went to John F. Kennedy International Airport, where he was arrested.  At the time of his arrest, the defendant was carrying, among other things, a passport, tent, boots, and cold-weather gear.  A search of the defendant's apartment revealed a set of handwritten notes, one of which stated: "Martyrdom does not come to the person.  The person finds martyrdom."

On September 8, 2011, a grand jury in the Eastern District of New York returned an indictment charging the defendant with one count of providing and attempting to provide material support to terrorists, in violation of Title 18, United States Code, Section 2339A.  On September 13, 2011, the government filed notice of its intent to use or disclose

3

information obtained or derived from electronic surveillance (Title I) and physical search (Title III) conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 ("FISA"), 50 U.S.C. §§ 1801-1812, 1821-1829.  On January 26, 2012, the grand jury returned a superseding indictment adding three more counts of providing and attempting to provide material support to terrorists, in violation of Title 18, United States Code, Section 2339A.

On April 12, 2012, after the government produced substantial discovery but before the filing of any pretrial motions, the defendant pled guilty to Count Two of the superseding indictment, which charged him with attempting to provide material support to terrorists, in violation of Title 18, United States Code, Section 2339A.  On January 16, 2013, Judge Gleeson sentenced the defendant to the statutory maximum term of fifteen years' imprisonment.

Following the imposition of sentence, the defendant filed a motion to vacate, set aside, or correct his conviction and sentence under Title 28, United States Code, Section 2255.  Thereafter, the Department of Justice determined that information obtained or derived from Title I or Title III FISA collection may, in particular cases, also be derived from prior Section 702 collection, such that notice concerning both Title I/III and Section 702 collections should be given in appropriate cases with respect to the same information. Following this determination, upon reviewing the evidence obtained or derived from Title I or Title III FISA collection in the defendant's case and determining that certain evidence was itself also derived from other collection pursuant to Section 702 as to which the defendant was aggrieved, the government provided a Supplemental Notification to the defendant, in effect providing him with notice that an additional legal authority had been used during the investigation.  Pursuant to 50 U.S.C. §§ 1806(c) and 1881e(a), the government notified the

4

defendant that it intended to offer into evidence or otherwise use or disclose in proceedings in the defendant's criminal case information derived from acquisition of foreign intelligence information conducted pursuant to Section 702, 50 U.S.C. § 1881a.  (Dkt. No. 65).  The defendant subsequently made a number of discovery requests including requests for classified factual information relating to the Title I/III and Section 702 collection relevant to his case, including all FISA applications, orders and related materials and their content. Judge Gleeson denied the defendant's requests.

On October 2, 2014, in connection with the defendant's Section 2255 petition and following the government's Supplemental FISA Notice, Judge Gleeson permitted the defendant to withdraw his plea of guilty.    The parties then engaged in extensive, complex pretrial litigation. This included motions related to FISA as well as the Classified Information Procedures Act ("CIPA").  As discussed further below, Judge Gleeson reviewed and considered each of these applications with due care, and in so doing became thoroughly familiar with the legal standards and doctrines applicable under both FISA and CIPA, as well as the specific prosecution theory and potential defenses in this particular case.

On November 26, 2014, the defendant filed pretrial motions including a motion to suppress all evidence obtained or derived from surveillance conducted pursuant to Section 702 of the FAA, codified at 50 U.S.C. § 1881a.  The government then filed an ex parte classified brief in opposition to the motion to suppress and filed a redacted unclassified version of its brief on the public docket.  (Dkt. Nos. 97-98).  The defendant filed a reply brief, in which he again made discovery requests for classified information including the redacted portions of the government's ex parte classified brief.  (Dkt. No. 104 at 40-49). After hearing argument, Judge Gleeson denied the defendant's motion to suppress, granted

the government's request to keep the redacted portions of its brief <u>ex parte</u>, and noted that an opinion would follow.  (<u>See</u> Dkt. Entry dated Feb. 20, 2015).  During the same time period, the government also filed an <u>ex parte</u> classified motion for a protective order pursuant to Section 4 CIPA.  (Dkt. No. 103).  Judge Gleeson granted the government's motion for a protective order and granted the government's request to keep its filing <u>ex parte</u>.  (Dkt. Entry dated Feb. 20, 2015).

On June 26, 2015, after Judge Gleeson found no basis to suppress evidence in this case, the defendant pled guilty to a superseding information, which charged him with providing and attempting to provide material support to terrorists, in violation of Title 18, United States Code, Section 2339A, and conspiring to provide material support to terrorists, in violation of Title 18, United States Code, Section 371.  The plea was pursuant to an agreement that preserved the defendant's right to appeal Judge Gleeson's denial of the motion to suppress the fruits of FAA surveillance, as well as any sentence above fifteen years' imprisonment.  Judge Gleeson subsequently sentenced the defendant to sixteen years' imprisonment, adding an additional year to his sentence because the Court found that the defendant had lied to the Court.

On February 18, 2016, Judge Gleeson provided to the Classified Information Security Officer a full, un-redacted, and presumptively classified version of the Opinion. (<u>See</u> Dkt. Entry dated Feb. 23, 2016).  The presumptively classified opinion was not served to defense counsel; rather, defense counsel received an unclassified and redacted version of the opinion.  (<u>See</u> Dkt. Entry dated Feb. 25, 2016).  Judge Gleeson then engaged in a classification review process and communicated with classification authorities in the government to arrive upon a final, unclassified and lightly redacted version of the Opinion,

which could be publicly filed.  (See Dkt. Entry dated Feb. 25, 2016).  After the classification

review, Judge Gleeson issued the final redacted version of the Opinion on the public docket.

(See Dkt. No. 165).  In doing so, Judge Gleeson stated:

> There are several instances in this memorandum where language
> has been substituted, and two instances where language has
> been redacted, from that in the presumptively classified opinion
> given to the classified information security officer on February
> 18, 2016.   These substitutions and redactions reflect the
> government's decision that the material redacted would 'expose
> government equities.'

(See Dkt. Entry dated Mar. 8, 2016).  In the Opinion, mindful of the applicable standards,

Judge Gleeson also expressly explained that disclosure of the FISA and Section 702

materials relevant to this case "was unnecessary here."  Opinion at 26.  Judge Gleeson

subsequently departed the federal judiciary.

On July 25, 2016, the defendant filed the instant motion.  The defendant's

appeal was stayed to permit defense counsel time to review Judge Gleeson's Opinion and

remains stayed pending the outcome of this matter.

ARGUMENT

I.    The Foreign Intelligence Surveillance Act Bars Releasing an Un-Redacted
      Version of Judge Gleeson's Opinion Under the Circumstances Presented Here

The defendant's motion stems from his failure to suppress evidence obtained pursuant to FISA. FISA provides that, where the Attorney General certifies that "disclosure or an adversary hearing would harm the national security of the United States," a district court "shall, notwithstanding any other law, . . . review in camera and ex parte the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. § 1806(f); see also 50 U.S.C. § 1825(g); 50 U.S.C. § 1881e(a) (applying same procedure to materials related to Section 702). The Attorney General filed such a declaration in this case. (Dkt. No. 97-1). That having been done, the Court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C. § 1806(g) (emphasis added).

Judge Gleeson conducted a careful review of the FISA and Section 702 materials relevant to this case and concluded that, "it is clear to me that disclosure was unnecessary here" to determine the legality of the surveillance. Opinion at 26. The same conclusion is implicit in Judge Gleeson's decision to include two redactions in the version of the Opinion provided to defense counsel and released to the public -- Judge Gleeson included those redactions while fully aware that the defendant was pursuing an appeal on the issue.

8

Accordingly, there is no basis for finding a need for disclosure here.  The matter already has been addressed.[1]

Nevertheless, the defendant argues that disclosure of the redacted portions to counsel is warranted in order to preserve the virtues of the adversarial system.  That argument is addressed explicitly in the text of the statute; courts are to review Section 702 and FISA materials ex parte and in camera except when disclosure is necessary for the Court to determine the legality of the surveillance.  See 50 U.S.C. § 1806(f); see also United States v. Daoud, 755 F.3d 479, 484-85 (7th Cir. 2014) (holding that district court violated FISA by ordering disclosure of FISA materials to cleared defense counsel).  The defendant's reliance on broad policy judgments is unavailing because they run counter to the balance Congress struck in devising FISA's suppression procedures.  The benefits of the adversary processes were not lost on Congress, which weighed those benefits against the exceptionally high costs of revealing sensitive foreign intelligence information.  See United States v. Belfield, 692 F.2d 141, 148 (D.C. Cir. 1982) (noting that Congress was "aware" of the difficulties of ex parte procedures, but Congress nevertheless made a "thoroughly reasonable attempt to balance the competing concerns of individual privacy and foreign intelligence.").

If a defendant could obtain disclosure merely by pointing out that adversary procedures are generally beneficial and that such procedures would help him formulate his arguments more effectively, disclosure would become the norm, circumventing Congress's intentions and upsetting decades of case law in national security cases.  See United States v. Abu-Jihaad, 630 F.3d 102, 129 (2d Cir. 2010) (recognizing that disclosure "is the exception"

---

[1] Moreover, the defendant may, if he wishes, challenge Judge Gleeson's finding that disclosure was unnecessary before the next court faced with determining the legality of the surveillance -- the Second Circuit Court of Appeals.

while "ex parte, in camera determination is the rule"); Belfield, 692 F.2d at 146-48 (noting

that Congress "was adamant" that the "carefully drawn procedures" of § 1806(f) were not to

be "bypassed by the inventive litigant using a new . . . judicial construction").  Contrary to

the defendant's argument, FISA's procedures strike a reasonable balance, and have been held

to be constitutional by every federal court that has considered the issue.  See, e.g., United

States v. El-Mezain, 664 F.3d 467, 567-69 (5th Cir. 2011); United States v. Damrah, 412

F.3d 618, 624-25 (6th Cir. 2005); Belfield, 692 F.2d at 147-48.  The government's

undeniable interest in protecting ongoing national security investigations and intelligence

sources and methods justified FISA's limitations on the defendant's right to review classified

FISA and Section 702 materials.  See Daoud, 755 F.3d at 483 (FISA attempts "to strike a

balance between the interest in full openness of legal proceedings and the interest in national

security, which requires a degree of secrecy concerning the government's efforts to protect

the nation.").

        Even beyond the specific context of Section 1806, while the general rule is

that ex parte proceedings are generally disfavored, courts have uniformly found that an

exception to the general rule is merited in cases involving classified materials that potentially

put at risk the national security.  See, e.g., United States v. Klimavicius-Viloria, 144 F.3d

1249, 1261 ("Ex parte hearings are generally disfavored.  In a case involving classified

documents, however, ex parte, in camera hearings in which government counsel participates

to the exclusion of defense counsel are part of the process that the district court may use to

decide the relevancy of the information.") (internal citation and quotations omitted).  Here,

Judge Gleeson released nearly all of his Opinion to counsel and the public in un-redacted

form in view of the pending appeal.  (Dkt. Entry dated Feb. 20, 2015).  The inclusion of two

limited redactions poses little, if any, impingement on the adversarial system.[2]

## II.     The Classified Information Procedures Act Does Not Provide a Basis for Releasing an Un-Redacted Version of Judge Gleeson's Opinion

Rather than basing its argument on Section 1806, which governs the proper

handling of FISA materials, the defendant relies instead on CIPA, which governs how

federal courts address and process matters concerning the discovery, admissibility, and use of

classified information in criminal cases.  Abu-Jihaad, 630 F.3d at 141.  Congress enacted

CIPA to enable the government to fulfill its duty to protect national security information

while at the same time vindicating its interest in prosecuting violations of federal criminal

law.  See S. Rep. No. 96-823, 96th Cong., 2d Sess., at 3 (1980), reprinted in 1980

U.S.C.C.A.N. 4294, 4296.  CIPA does not create any discovery rights for the defendant.

United States v. Dumeisi, 424 F.3d 566, 578 (7th Cir. 2005); United States v. Varca, 896

F.2d 900, 905 (5th Cir. 1990).  Rather, CIPA applies the general law of discovery in criminal

cases to classified information and restricts discovery of classified information to protect the

government's national security interests.  See United States v. Yunis, 867 F.2d 617, 621

---

[2] Indeed, the defendant's argument ignores the fact that courts have consistently upheld the use of in camera, ex parte review in various contexts, including specifically reviewing lawfulness of electronic surveillance.  See Kaley v. Untied States, 134 S. Ct. 1090, 1103 (2014) (noting that the Supreme Court has "repeatedly declined to require the use of adversarial procedures to make probable cause determinations"); Daoud, 755 F.3d at 482 (recognizing that many hearings in multiple contexts are properly conducted ex parte); Taglianetti v. United States, 394 U.S. 316, 317 (1969) ("Nothing [in the Supreme Court's preceding decisions] requires an adversary proceeding and full disclosure for resolution of every issue raised by an electronic surveillance"); Giordano v. United States, 394 U.S. 310, 313 (1969) ("[A] finding by the District Court that the surveillance was lawful would make disclosure and further proceedings unnecessary"); id. 314 (Stewart, J., concurring) ("We have nowhere indicated that this determination cannot appropriately be made in in camera, ex parte proceedings."); United States v. Aljouny, 629 F.2d 830, 839 (2d Cir. 1980) (holding that an adversary hearing and full disclosure are not required to resolve the legality of electronic surveillance "when the task is such that in camera procedures will adequately safeguard the defendant's Fourth Amendment rights").  Even the Supreme Court's decision in Alderman v. United States, rejected the principle that disclosure of the fruits of surveillance in lieu of in camera inspection is always required to adjudicate suppression motions regardless of the impact of disclosure on national security.  394 U.S. 165, 184 n.15 (1969).

(D.C. Cir. 1989).  CIPA, then, provides a separate and distinct statutory framework that is inapplicable to a district court's determination regarding disclosure under Section 1806.

Even under CIPA, however, Section 4 authorizes a district court to deny or otherwise restrict discovery of classified information.  Section 4 of CIPA provides, in pertinent part, that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove."  18 U.S.C. App. 3, § 4.  CIPA's legislative history makes clear that the Court may take national security interests into account in determining whether to permit discovery to be denied, restricted or deferred.  S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300 (1980); United States v. Smith, 780 F.2d 1102, 1110 (4th Cir. 1985) (holding that defendant's right to discovery must be balanced against public's interest in non-disclosure). To determine whether deletion or substitution of classified information is appropriate, courts balance the government's national security interests against the defendant's right to present his defense. In making this determination, courts have adopted the test for the informant's privilege set forth by the Supreme Court in United States v. Roviaro, 353 U.S. 53 (1957).  The Second Circuit has explained that in the context of CIPA, the government maintains an obligation to provide the defense with information that is material or helpful to the defense.  United States v. Aref, 533 F.3d 72, 79 (2d Cir 2008) ("Indeed, we have interpreted 'relevant and helpful'

12

under Roviaro to mean "material to the defense."). Whether evidence is helpful or 'material to the defense is within the district court's discretion." Id. at 80.[3]

Judge Gleeson determined that it was appropriate, given the statutory requirements of FISA, to include the challenged redactions, as well as certain substitutions, in his Opinion denying the defendant's FISA motions. (Dkt. Entry dated Mar. 8, 2016). Nothing in CIPA or the case law cited by the defense provides any reason to revisit Judge Gleeson's determination.[4] Indeed, courts regularly keep portions of their opinions classified in FISA and CIPA cases.

---

[3] Courts have consistently held that ex parte, in camera submissions to a district court in matters involving national security are proper. See, e.g., Abu-Jihaad, 630 F.3d at 143 (district court "acted well within its discretion in reviewing [CIPA] submissions ex parte and in camera"); United States v. Stewart, 590 F.3d 93, 132-33 (2d Cir. 2009) (rejecting claim that district court erred in reviewing CIPA materials ex parte and in camera); Aref, 533 F.3d at 81 (same); United States v. Boulos, No. 13-CR-612 (ENV), 2015 WL 502170, at *2 (E.D.N.Y. Feb. 3, 2015) (noting that the government's CIPA Section 4 submission "was appropriately filed ex parte and under seal"); United States v. Zazi, No. 10-CR-60 (JG), 2011 WL 2532903, at *3 (E.D.N.Y. June 24, 2011) ("With respect to the government's request to delete irrelevant classified materials from discovery, an adversary proceeding would be particularly anomalous, as it would provide defense counsel access to sensitive information to which, if the government is correct, they are not entitled under any theory."); see also Klimavicius-Viloria, 144 F.3d at 1261 ("In a case involving classified documents . . . ex parte, in camera hearings in which government counsel participates to the exclusion of defense counsel are part of the process that the district court may use in order to decide the relevancy of the information."); United States v. Rezaq, 134 F.3d 1121, 1143 (D.C. Cir. 1998) ("We find that the district court did a commendable job of discharging its obligations under CIPA, and in particular that its orders protected [the defendant's] rights very effectively despite the fact that [the defendant's] attorney was unable to participate in the CIPA proceedings."); Sarkissian, 841 F.2d at 965 (rejecting claim that the district court erred in reviewing CIPA materials ex parte and in camera); United States v. Campa, 529 F.3d 980, 995 (11th Cir. 2008); United States v. Hanna, 661 F.3d 271, 294 (6th Cir. 2011); United States v. O'Hara, 301 F.3d 463, 568-69 (7th Cir. 2002); Klimavicius-Viloria, 144 F.3d at 1261; Yunis, 867 F.2d at 620; Sarkissian, 841 F.2d at 965.

[4] Courts also regularly and properly keep portions of their opinions classified in FISA and CIPA cases. See United States v. Mohamud, No. 10CR-475, 2014 WL 2866749, at *2 (D. Or. June 24, 2014) (determining the lawfulness of Section 702 surveillance and "filing an accompanying classified opinion" in addition to the unclassified opinion "to explain some of my reasoning"); Sedaghaty, 728 F.3d at 891 (filing a classified opinion with respect to a CIPA substitution); Daoud, 755 F.3d at 485 (filing a classified opinion with respect to the legality and disclosure of FISA material because the court was "forbidden to [explain its conclusions] in a public document," and suggesting that district judges should "issue a classified statement of reasons" when their reasoning cannot be fully explained in an unclassified opinion ).

III.     Counsels' Security Clearances Do Not Provide a Legal Basis for Releasing an
         Un-Redacted Version of Judge Gleeson's Opinion

        The defendant further suggests that the security clearance provided to defense

counsel is adequate protection to permit defense counsel to review the redacted portions of

the Opinion.  In the context of FISA, however, cleared counsel do not have a need to know

the classified information unless the Court determining the legality of the surveillance (here,

Judge Gleeson in the first instance and the Circuit Court in the next instance) concludes that

disclosure to counsel is "necessary" for it to make the legal determination.  See El-Mezain,

664 F.3d at 568 (quoting United States v. Ott, 827 F.2d 473, 477 (9th Cir. 1987)) (discussing

the legitimate interest in ensuring that "sensitive security information is not unnecessarily

disseminated to anyone not involved in the surveillance operation in question, whether or not

she happens for unrelated reasons to enjoy security clearance"); United States v. Warsame,

547 F. Supp. 2d 982, 989 n.5 (D. Minn. 2008); United States v. Bin Laden, 126 F. Supp. 2d

264, 287 n.27 (S.D.N.Y. 2000), affirmed by In re Terrorist Bombings of U.S. Embassies in

East Africa, 552 F.3d 157 (2d Cir. 2008).  As the district court has already determined that

such disclosure is not necessary under FISA, Opinion at 26, this defense claim must fail.

        Even beyond the specific context of FISA, it is well-settled that the fact that

defense counsel may possess a security clearance has no bearing on the discoverability of

classified information.  Possession of a security clearance neither "mandate[s] an adversary

hearing [nor] access to immaterial classified information for which counsel has no legitimate

need."  Zazi, 2011 WL 2532903, at *3.  Classified information may be disclosed only to

individuals who both possess the requisite clearance and have a "need to know" the

information at issue.  See Executive Order 13526, §§ 4.1(a) and 6.1(dd) (requiring that a

"need-to-know" determination be made prior to the disclosure of classified information to anyone, including those who possess a security clearance); see generally Ott, 827 F.2d at 477 (rejecting the notion that "a defendant's due process right to disclosure of [classified] materials turns on the qualifications of his counsel").

Similarly, as discussed above in the context of CIPA, cleared counsel do not have a need to know the classified information unless the Court determines that the information is material or helpful to the defense.  The purpose of the ex parte proceedings is to allow the district court to make those determinations – and thus determine whether defense counsel has a need to know the classified information at issue.  As the district court noted in Abu-Jihaad:

> [T]he purpose of the Government's [CIPA Section 4] Motion is to permit this Court to determine whether the classified information in question is discoverable at all.  See United States v. Libby, 429 F. Supp. 2d 46, 47 (D.D.C. 2006) (holding that CIPA § 4 allows the Government to ask the Court to determine that classified information need not be produced at all).  If the Court were to conclude that some or all of the information is discoverable, the Government would then need to decide . . . whether to produce the information to defense counsel subject to appropriate security clearance, [or] seek alternate relief under CIPA . . . . If, on the other hand, the Court decides that the information is not discoverable at all, Defendant is not entitled to production of the information, regardless whether his counsel is willing to submit to security clearance procedures.

United States v. Abu-Jihaad, No. 07-CR-57 (MRK), 2007 WL 2972623, *2 (D. Conn. Oct. 11, 2007), affirmed by Abu-Jihaad, 630 F.3d at 143.

Similarly, in Libby, the district court was called upon to determine whether to permit defense counsel to review the government's CIPA Section 4 motion where defense

counsel (and the defendant) held appropriate security clearances.  429 F. Supp. 2d 18, amended by 429 F. Supp. 2d. 46 (D.D.C. 2006).  In deciding this issue, the district court emphasized that the key question was not whether defense counsel had the appropriate security clearance, but rather whether defense counsel had both a security clearance and a "need to know."  As the Libby court explained, "[i]t is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses."  Id. at 24 n.8.  In short, and as Zazi, Abu-Jihaad, and Libby make clear, when the defense does not have a "need to know" with respect to certain classified information, a court filing that references that information may be made ex parte.  Here, as Judge Gleeson already made the determination that disclosure is not necessary under FISA, defense counsel cannot have the "need to know" required for access to the classified materials at issue.

16

CONCLUSION

For the reasons set forth above, the government respectfully submits that the Court should deny the defendant's motion.

Dated: Brooklyn, New York
        August 23, 2016

                                        Respectfully submitted,

                                        ROBERT L. CAPERS
                                        United States Attorney

                        By:     _____/s/_____
                                        Seth D. DuCharme
                                        Saritha Komatireddy
                                        Peter W. Baldwin
                                        Assistant U.S. Attorneys

cc:     Clerk of the Court (DLI) (by ECF)
        All counsel of record (by ECF)