LAW OFFICES OF
# DRATEL & LEWIS

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
—
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: llewis@dratellewis.com

JOSHUA L. DRATEL  FATOUMATA MAGASSA
LINDSAY A. LEWIS  *Paralegal*

June 24, 2022

**BY ECF**

The Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: *United States v. Hasbajrami*,
         11 Cr. 623 (JG)

Dear Judge DeArcy Hall:

  This letter is respectfully submitted as defendant Agron Hasbajrami's Reply to the government May 5, 2022, Memorandum of Law (ECF # 196) in opposition to Mr. Hasbajrami's Post-Remand Memorandum of Law in Support of his Motion for Suppression and Access to Related Discovery ("Initial Memo of Law") (ECF #191). Mr. Hasbajrami's Initial Memo of Law anticipated certain of the government's arguments, and his positions with respect to those arguments will be referred to but not repeated herein. Rather, this Reply will concentrate on other arguments by the government in its opposition. As detailed below, for a number of reasons, the government's arguments are all without merit.

  For example, in relegating the issue of disclosure to security-cleared defense counsel to Point II, the government puts the cart before the horse: ultimately, the government claims the querying was "reasonable," but bases that conclusion on 32 separate redactions of classified information in a 36-page submission. Yet that begs the questions: How can the Court make that determination accurately and fairly without participation by defense counsel? How does a party stand a chance at success in litigation if it is denied access to the facts that are essential for the Court's evaluation?

  In addition, the government asserts that certain legal principles apply, yet they are each unavailing to sustain the backdoor querying the government conducted in its investigation and

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 2 of 15

prosecution of Mr. Hasbajrami. Indeed, the government ignores entirely *any* contrary law, including even express declarations within the Second Circuit's opinion *in this case*. That begs an additional question: Imagine the Court's impression of the state of the law with respect to the pertinent issues herein if it read only the government's opposition Memo of Law, and not Mr. Hasbajrami's Initial Memo of Law and this Reply? The same is true of the facts, except that Mr. Hasbajrami's security-cleared counsel have thus far been denied the opportunity to comment thereon.

As discussed below,

(1) contrary to the government's contention, the collection, retention, and subsequent searching of private electronic communications, and the government's indefinite unfettered access to it, are *not* a "minimal intrusion" on an individual's privacy;

(2) in contending that a warrant is not necessary for querying, the government reverses the legal presumption – a warrant is the *default* requirement – while mischaracterizing the Second Circuit's opinion and ignoring the concerns Congress and others have expressed with respect to warrantless querying of the Section 702 databases;

(3) in relying on the "foreign intelligence exception," the government seeks to conflate and bootstrap authority for the initial interceptions to the querying. That would negate the entire intent and purpose of the Second Circuit's remand, and create an impermissible *legal* "backdoor" for Section 702 (50 U.S.C. §1881) database "backdoor searches";

(4) the "special needs" exception in inapposite because the backdoor querying fails to meet the standards for a viable "special needs" search; and

(5) the government's invocation of the "good faith" doctrine is unavailing because it fails to address the government's persistent violations of the Foreign Intelligence Surveillance Act ("FISA"), and Section 702 in particular, that have not only gone uncorrected for decades, but which, as set forth **post**, at 13-14, have continued even since Mr. Hasbajrami's Initial Memo of Law was filed.

In addition, the government's arguments against disclosure to security-cleared defense counsel fails to address not only the unique circumstances of this case, but also the Second Circuit's express direction that this Court should decide that issue *de novo* – which clearly portends that the litany of prior cases the government cites are not dispositive.

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 3 of 15

Notably, the government does *not* claim that if Mr. Hasbajrami's motion is successful, that the government would have sufficient evidence to continue its prosecution of him. Indeed, the contrary is the case. The present litigation resulted out of a conditional guilty plea and as such this motion presents a categorical issue that by the terms of the parties' agreement will dispose of this case without a trial.

Accordingly, for the reasons set forth below, as well as those in Mr. Hasbajrami's Initial Memo of Law, it is respectfully submitted that Mr. Hasbajrami's motion should be granted in its entirety, the fruits of the warrantless backdoor querying suppressed, and the prosecution against Mr. Hasbajrami dismissed in its entirety.

In addition, and at a minimum, unless the government's mistakes are so clear to this Court that no input is needed to find for Mr. Hasbajrami, then the classified information in the government's Memo of Law (and any other pertinent classified information) should be disclosed to security-cleared defense counsel so that defense counsel may aid this Court in discerning the accuracy and veracity of the government's classified statements.

Disclosure is particularly appropriate in this case, in which the government's statements and omissions have already been proven to be unreliable in the District Court and have frustrated the Second Circuit's efforts to ascertain the scope of the backdoor querying. *See, e.g.*, *United States v. Hasbajrami*, 2014 WL 4954596, *3 (E.D.N.Y. Oct. 2, 2014) (ECF #85) (Order permitting Mr. Hasbajrami to withdraw his guilty plea due to government's deliberate failure to provide Section 702 notice); *United States v. Hasbajrami*, 945 F.3d 641, 648 (2d Cir. 2019). *See also* Initial Memo of Law, at 8, 23 n. 10.

**I.**   *Disclosure Is Necessary and Appropriate In This Case to Assist the Court in Making an Accurate Determination, and to Satisfy Due Process*

The government's claim that Mr. Hasbajrami "fail[s] to address the relevant question whether the specific queries in this case were reasonable under the Fourth Amendment[,]" Gov't Opp., at 1, borders on gaslighting considering the government's refusal to provide *any facts to security-cleared defense counsel for review and analysis of that very question.*

Also, in its entire nine pages of argument on the subject, *see* Gov't Opp., at 27-35, the government ignores completely the fact that the Second Circuit did not foreclose disclosure to security-cleared defense counsel. Rather, it left if for this Court to determine. *Hasbajrami*, 945 F.3d at 677 n. 24. *See also* Initial Memo of Law, at 30. The Second Circuit could quite easily have decided that issue against Mr. Hasbajrami or omitted it from its opinion. Its guidance is instructive in that regard.

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 4 of 15

In addition, with respect to the government's account of its misrepresentations to Mr. Hasbajrami at the outset of the case regarding the very issue still being litigated – the electronic surveillance pursuant to Section 702 – contrary to the government's exoneration of itself, *see* Gov't Opp., at 33 (neither the District Court nor Second Circuit "found any evidence of prosecutorial misconduct related to the timing of the notice"), Judge Gleeson did, in fact, declare (and the Second Circuit repeated) that, "[w]hen the government provided FISA notice without [FISA Amemdents Act ("FAA")] notice, Hasbajrami was misled about an important aspect of his case." *United States v. Hasbajrami*, 2014 WL 4954596, *3 (E.D.N.Y. Oct. 2, 2014) (ECF #85). *See also Hasbajrami*, 945 F.3d at 648 ("the government's misleading notice, according to the district court, prevented Hasbajrami from knowing that he could challenge the evidence against him on the grounds that Section 702 was unconstitutional").

The government's devotion to secrecy as a means of shielding itself from accountability for Fourth Amendment violations, and its concurrent disdain for the adversary process, is repeated in its opposition. In a defiant and brazen – and remarkably transparent – attempt to deny this Court the opportunity to decide the important issues in this case, including whether to disclose materials and information to security-cleared defense counsel, the government

> respectfully submits that that FISC [Foreign Intelligence Surveillance Court], rather than a district court adjudicating a case-specific suppression motion, should assess the reasonableness of the government's Section 702 querying procedures and practices at the general level. The FISC has the necessary statutory mandate, expertise, and record evidence before it to undertake that function.[]

Gov't Opp., at 26 (footnote omitted).[1]

It is, of course, preposterous for the government to assert that this Court would not possess the competence to decide these issues. The Second Circuit could have easily referred the matter to the FISC if it thought that was the proper forum, and/or that this Court was not capable of determining the issues. Indeed, it is most telling with respect to the merits of these issues that the government requests that this Court abdicate the responsibilities entrusted to it by the Second Circuit, and instead send the matter to an *ex parte* Court in which, by design, opposing arguments are not presented, and (unsurprisingly) the government never loses.

In remanding the matter *to this Court*, as the government acknowledges, the Second

---

[1] Of course, the government has redacted that footnote.

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 5 of 15

Circuit "directed this Court to consider 'what databases were queried by whom, for what reasons, what (if any) information was uncovered by such queries, [and] what (if any) use was made of any information uncovered.'" Gov't Opp., at 6.

Yet, it is inconceivable that the answers to those questions, and deciding whether the queries were "reasonable," could be determined accurately or fairly, or consistent with Fifth Amendment Due Process and the Fourth Amendment as well, without security-cleared defense counsel's ability to review and analyze the facts related to those issues. Consequently, without disclosure, how could a court ever be assured that a defendant's Fourth Amendment rights are sufficiently protected while his Sixth Amendment right to effective assistance of counsel is being directly undermined by the government's Fifth Amendment Due Process deprivation?

Nevertheless, notwithstanding both the government's repeated misrepresentations and evasions in this case, discussed in Mr. Hasbajrami's Initial Memo of Law, at 23-27, and the FISC's annual recitation (in its opinions) of the persistent violations of the Fourth Amendment and statutory protocols relevant to Section 702 interception, the government's position remains, "trust us" that the querying conformed with the Fourth Amendment. At this stage, and in light of the Second Circuit's explicit directive that this Court can consider the disclosure issue *de novo*, the government's position is untenable.[2]

The government's assertion that the Classified Information Procedures Act ("CIPA") would not be useful in navigating the disclosure issue also is without foundation, which is evident from the failure to provide citation to any authority for that claim. *See* Gov't Opp., at 33-34. In fact, CIPA principles and procedures have been considered sufficiently flexible to be applied in situations for which they were not expressly devised.

For example, in *United States v. Moussaoui*, 365 F.3d 292 (4th Cir.), *opinion amended on reh'g*, 382 F.3d 453 (4th Cir. 2004) the Fourth Circuit applied CIPA to a defendant's Sixth Amendment right to compulsory process in order to obtain information from persons (secretly) in U.S. custody. *Id.*, at 308 n. 12. *See also* Initial Memo of Law, at 96.

Even more recently, earlier this year, in *United States v. Husayn*, ___ U.S. ___, 142 S. Ct. 959 (2022), Justices Gorsuch and Sotomayor, in dissent, cited CIPA as a means of regulating

---

[2] The government relies repeatedly on *United States v. Muhtorov*, 20 F.4th 558 (10th Cir. 2021) to forestall disclosure. *See* Gov't Opp., at 15-16 n. 9, 28-29, 32 & 35. However, Mr. Hasbajrami's Initial Memo of Law, at 8, 12, 17 n. 7, 18, 24 n. 11, 27 n. 13, 45 n. 27, 92 n. 59, 98 n. 60, thoroughly distinguishes *Muhtorov* – a fact the government's opposition declines to acknowledge at all.

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 6 of 15

disclosure of classified information in a *civil* case. *Id*., at *28 (Gorsuch, J., joined by Sotomayor, J., *dissenting*). *See also id*., at *19-20 (Kagan, J., *dissenting*).

In that context, contrary to the government's protests, *see* Gov't Opp., at 25-26, 31-32, examination of the history of Section 702 violations is specifically relevant to whether disclosure to security-cleared counsel is necessary and appropriate in this case. Ultimately, in light of the historical record of repeated, unpunished, and unremedied violations of Section 702 program generally (and FISA generally), and the backdoor querying process in particular (since its inception), how can the Court be confident of an accurate determination without the substantive participation of security-cleared defense counsel in evaluating the facts at issue?

As Justices Gorsuch and Sotomayor noted in their dissent in *Husayn*, "[t]here comes a point where we should not be ignorant as judges of what we know to be true as citizens." *Id*., at 20, *citing Watts v. Indiana*, 338 U.S. 49, 52 (1949). This case presents just such an instance.[3]

**II.     *As the Courts Have Held, and Contrary to the Government's
            Claim, the Privacy Interests At Issue Herein Are Substantial***

The government's claim that Mr. Hasbajrami's privacy interest in not having his electronic communications subject to backdoor querying is "minimal" or "not significant," *see* Gov't Opp., at 17-18, is not only manifestly wrong, but it also ignores completely the declaration by the Foreign Intelligence Surveillance Court ("FISC") in 2018 – *cited in Mr. Hasbajrami's Initial Memo of Law*, at 41 – specifically with respect to querying that "[t]he Court regards the privacy interests at stake as substantial." *In re Foreign Intelligence Surveillance Court*

---

[3] In analyzing the issues in *Husayn*, Justices Gorsuch and Sotomayor, examined the historical record in much the same manner as the Initial Memo did herein, contextualizing past instances in which subsequent disclosures decades later revealed that the government, in invoking the state secrets doctrine to preclude access to information, had not been candid to the courts in claiming a need for secrecy. In concluding that "[m]ore recent history reveals that executive officials can sometimes be tempted to misuse claims of national security to shroud major abuses and even ordinary negligence from public view[,]" 142 S. Ct. at *26, they cited several historical examples, including the initial state secrets case, *Reynolds v. United States*, 345 U.S. 1 (1953), that was predicated on a lie. *Id*., *citing* Dept. of Justice, Archives, N. Katyal, *Confessions of Error: The Solicitor General's Mistakes During the Japanese-American Internment Cases* (May 20, 2011); J. Weinstein, *The Role of Judges in a Government of, by, and for the People: Notes for the Fifty-Eighth Cardozo Lecture*, 30 Cardozo L. Rev. 1, 92 (2008); W. Weaver & R. Pallitto, *State Secrets and Executive Power*, 120 Pol. Sci. Q. 85, 101, 107-112 (2005).

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 7 of 15

*[Redacted]*, 402 F.Supp. 3d 45 (FISA Ct. 2018), *aff'd in part sub nom. In re DNI/AG 702(h) Certifications 2018*, 941 F.3d 547 (FISA Ct. Rev. 2019) ("2018 FISC Op.").

That statement by the FISC was unremarkable because it simply restated longstanding doctrine with respect to the privacy interests at stake in electronic communications. For example, in *Berger v. New York*, 388 U.S. 41, 63 (1967) ("[f]ew threats to liberty exist which are greater than that posed by the use of eavesdropping devices"). *See also id.*, at 58 ("[t]he need for particularity and evidence of reliability in the showing required when judicial authorization of a search is sought is especially great in the case of eavesdropping").

Moreover, while the government claims that "[c]hanges in technology make timing concerns even more acute[,]" *see* Gov't Opp., at 23, the concerns generated by changes in technology are exponentially greater with respect to privacy considerations – a fact the Supreme Court has recognized in a series of cases decided in the past decade, and which the Second Circuit *discussed in this case* (again, ignored by the government). 945 F.3d at 671-72. *See, e.g., Carpenter v. United States*, 138 S. Ct. 2206 (2018); *Riley v. California*, 573 U.S. 373 (2014); *United States v. Jones*, 565 U.S. 400 (2012). *See also United States v. Moalin*, 973 F.3d 977, 991-92 (9th Cir. 2020) (the "long-term surveillance, made possible by new technology, upends conventional expectations of privacy"), *citing Jones*, 565 U.S. at 429.[4]

### III.    *The Backdoor Querying In This Case Required a Warrant*

Mr. Hasbajrami's Initial Memo of Law, at 31-36, explains why the Fourth Amendment required a warrant for the backdoor querying in this case. The government does not address those arguments. Nor does it, once again, confront the substance of the Second Circuit's extensive discussion, *in its opinion in this case*, of the cases and considerations that would make a warrant necessary. 945 F.3d at 670-72. *See* Gov't Opp., at 16-17.

The Second Circuit's explication of the warrant requirement was neither idle nor superfluous. Nor is the government's claim availing that the "court of appeals did not suggest that any presumption of a warrant requirement applies in this context," Gov't Opp., at 17, since the Second Circuit did not have to mention the presumption *because that is settled law*. *See Katz v. United States*, 389 U.S. 347, 357 (1967) (searches undertaken without a warrant, as was the case here, "are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions").

---

[4] While the government claims, in its opposition, at 11, "Section 702 is not implemented by collecting communications in bulk[,]" at the very least Section 702 intercepts are *stored* in bulk, and essentially *queried* in bulk. *See* Initial Memo of Law, at 8-23.

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 8 of 15

The government, at 24 of its opposition, grievously mischaracterizes the Second Circuit's opinion herein by repeating the following quote as support for the government's argument that querying does not require a warrant:

> If it is reasonable – and indeed necessary to the national security – for intelligence agencies to monitor the communications of suspected foreign terrorists abroad, the need to keep track of the potential threat from abroad does not lessen because some of the suspect's contacts turn out to be American nationals, or foreign nationals located within the United States.

*Hasbajrami*, 945 F.3d at 667.

Yet if that statement applied to querying rather than only to the initial interception pursuant to Section 702, there would not be any need for remand. Thus, the analysis is different, as is the conclusion. Indeed, the government proposes a standard *not* in effect, claimin that the Fourth Amendment principle of reasonableness "generally requires obtaining a warrant when law enforcement officers conduct a search for evidence of ordinary crime, [but] that procedure is by no means inflexibly required." Gov't Opp., at 17, *citing Maryland v. King*, 569 U.S. 435, 447 (2013). In fact, the converse is true: a warrant is required unless the search is covered by a recognized exception. *See, e.g., Katz*, 389 U.S. at 357. *See also* Initial Memo of Law, at 31-36.[5]

The government also fails to address *Riley*, which involved a device seized lawfully, but for which a subsequent search of the digital information stored within required a warrant before review could occur. 573 U.S. at 401. Likewise, the government's facile treatment of *Carpenter*, *see* Gov't Opp., at 21-22, ignores the importance of *stored* digital information, and simply does not acknowledge the Second Circuit's application of *Carpenter*'s principles (without deciding) to querying. *Jones*, too, involved information that could be lawfully collected discretely, but which in aggregate required a warrant. 565 U.S. at 415-16 (Sotomayor, J., *concurring*). *See also* Initial Memo of Law, at 33-37, 39, 42, 49-50, .[6]

---

[5] In addition, as discussed in Mr. Hasbajrami's Initial Memo of Law, at 22, 33 n. 17, many in Congress have concluded that a warrant should be required for querying Section 702 databases.

[6] The cases cited by the government at 24-25 of its opposition for the proposition that querying of lawfully obtained information does not require a warrant were all decided before *Carpenter*, *Riley*, and *Jones*, and even before Section 702 was enacted.

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 9 of 15

The government also asserts, "where the governmental need is especially compelling or likely to be frustrated by a warrant requirement[,]" a warrant may not be required. Gov't Opp., at 20. However, here the government has not offered any rationale or evidence – either generally or specifically related to this case – why the requirement that it obtain a warrant would "frustrate" a governmental need.

Similarly, the government notes, at 24-25, that the warrant requirement can be relaxed "where expectations of privacy are diminished[.]" Yet, as pointed out **ante**, at 6-7, that is not the case here. Likewise, this is not a situation "where alternative safeguards restrain the government within reasonable limits." *Id*. Instead, as the Initial Memo of Law, at 46-82, makes clear, the government has acted with ultimate impunity without consequence in the context of Section 702 querying. The evidence of continued violations, absent any accountability, dispositively refutes the government's contention.

The government also maintains, in its opposition at 23, that

> [e]ven when the government has enough information to obtain a "query warrant," the need to develop such information, prepare an application, and obtain judicial approval for every query would result in delays that would hinder the government's ability to monitor and respond to fast-moving threats. *See In re Directives*, 551 F.3d at 1011-12; [Privacy & Civil Liberties Oversight Board] Report 104-06.

Yet that complaint is *always* the excuse for why a warrant would be inconvenient. In addition, the urgency with respect to querying is diminished, as it does not involve real-time monitoring, but instead retrospective database searching. *See* Initial Memo of Law, at 19-23.[7] That argument is as futile here as it is generally with respect to the warrant requirement, which is not a matter of inconvenience, but rather a fundamental constitutional imperative.

IV.  *The Second Circuit's Opinion and Remand Make It Clear That the Foreign Intelligence Exception Does Not Encompass Backdoor Querying*

The government's contention, in its opposition, at 20, that querying is within the foreign intelligence exception provides an illustrative example of the government's selective resort to

---

[7] *In re Directives*, cited often by the government, is inapposite. It involved an *ex parte* application of the Protect America Act, the predecessor statute to Section 702, and did not address querying, but rather the initial overseas interceptions. 551 F.3d at 1015.

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 10 of 15

isolated portions of the Second Circuit's opinion – depriving them of proper context – and ignoring the opinion's contrary meaning.

The government's claim is merely an attempt at bootstrapping the authority for the initial Section 702 interception/collection to excuse the subsequent querying. If that were the case, the Second Circuit could have (and would have) easily combined its ruling on the first question with what it left open for this Court. Also, in declaring that querying constitutes "a separate Fourth Amendment event," 945 F.3d at 670, the Second Circuit clearly rejected the government's claim that the foreign intelligence exception encompasses the subsequent querying of Section 702 databases.

Likewise, the cases the government cites in its opposition at 21-22, all relate to initial Section 702 interception (or, like *In re Sealed Case*, 310 F.3d 717 (FISCR 2002), predate Section 702 altogether and therefore do not address the issues present in this case at all), and *not* subsequent backdoor querying. The Second Circuit case, *Cassidy v. Chertoff*, 471 F.3d 67 (2d Cir. 2006), is not even related to Section 702 (and predates its enactment), much less subsequent database querying.[8]

**V.    *The Backdoor Querying Fails to Satisfy the Criteria for the "Special Needs" Exception***

Mr. Hasbajrami's Initial Memo of Law, at 38-40, sets forth in detail the prerequisites for application of the "special needs" exception to the Fourth Amendment and its warrant requirement. In contending the "special needs" exception rescues the backdoor querying at issue in this case, the government (again) ignores that discussion entirely. As set forth in Mr. Hasbajrami's Initial Memo of Law, the querying here fails to satisfy the criteria for the "special needs" exception.

**VI.    *The "Good Faith" Exception Does Not Apply In This Case***

As a threshold matter, the government is mistaken in claiming, in its opposition, at 15, that because this remand is for the purpose of examining whether the querying violated the

---

[8] In the case in which the Second Circuit first articulated the foreign intelligence exception, *In re Terrorist Bombings*, 552 F.3d 157 (2d Cir. 2008), the Court adopted the exception to the traditional warrant requirement because the eavesdropping of a U.S. citizen occurred *overseas*, and the Fourth Amendment's warrant requirement did not apply outside the U.S. *Id.*, at 171. Thus the electronic surveillance (which was also governed by a separate surveillance authority, Executive Order 12,333, *see* Initial Memo of Law, at 128) was evaluated solely pursuant to a reasonableness standard. *Id.*

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 11 of 15

Fourth Amendment and not the provisions of the FISA statute, FISA's categorical suppression mechanism that would preclude application of the "good faith" exception does not apply.

FISA's statutory remedy, set forth in 50 U.S.C. §1806(b), provides that if the Court "determines that the surveillance was not lawfully authorized or conducted, it *shall* . . . suppress the evidence which was unlawfully obtained or derived" from such surveillance. (Emphasis added). No less a FISA authority that David S. Kris (*see* Initial Memo, at 110-11), has written in his treatise that "[t]his ground for suppression plainly includes constitutional challenges to FISA itself." David S. Kris & J. Douglas Wilson, 2 *National Security Investigations & Prosecutions* §32:3 (2d ed. 2012).

Thus, if the Court finds that the querying in this case was unlawful, §1806(g) mandates suppression and the "good faith" exception is unavailable to the government. *See also United States v. Giordano*, 416 U.S. 505, 524 (1974) (suppression required by a statute "does not turn on the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights").

Nor would the "good faith" exception rescue the querying in this case even if it were applicable. As the Second Circuit has explained, "[i]t is the Government's burden – not [the defendant's] – to demonstrate the objective reasonableness of the officers' good faith reliance" on binding appellate precedent. *United States v. Ganias*, 755 F.3d 125, 140 (2d Cir. 2014), *rev'd on other grounds*, 824 F.3d 199 (2d Cir. 2016) (*en banc*), citing *United States v. Voustianiouk*, 685 F.3d 206, 215 (2d Cir. 2012).

In addition, the "good faith" exception is applicable only when government personnel conducts a search "in objectively reasonable reliance on binding judicial precedent." *Davis v. United States*, 564 U.S. 229, 247 (2011). As the Eleventh Circuit initially explained, however, binding judicial "precedent on a given point must be *unequivocal*." *United States v. Davis*, 598 F.3d 1259, 1266 (11th Cir. 2010) (emphasis added), *aff'd*, 564 U.S. 229 (2011).

Here, the government cannot satisfy that burden. Indeed, as recounted **ante**, at 4, the government's claims of "good faith" ignore Judge Gleeson's blunt characterization of the government's misrepresentations *in this very case* that required Mr. Hasbajrami's initial guilty plea to be vacated.

Judge Gleeson elaborated that there existed "a DOJ [Department of Justice] policy that transcended this case" designed to intentionally fail to provide notice of warrantless FAA surveillance. Order, October 2, 2014 (ECF #85), at 6). That defines *bad* faith, as the only plausible rationale for such concealment was to prevent courts from adjudicating challenges by defendants to Section 702 surveillance because DOJ itself had serious doubts about Section

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 12 of 15

702's constitutionality.

Further proof is that here the government stood silently while Mr. Hasbajrami entered a guilty plea that was neither knowing nor intelligent, and, rather than acknowledge Section 702's role in this case, watched him be sentenced to 15 years' imprisonment as a result. Nor is the government's excuse for its prevarication, set forth in its opposition, at 33, viable, and it did not convince Judge Gleeson, either.

The government's resort to the "good faith" doctrine only reinforces the need for disclosure to security-cleared defense counsel. "Good faith" is essentially a factual question, even if the standard is objective. It would be perverse if the only party able to review, analyze, and argue the facts is the very party whose "good faith" is at issue. That is not just an *ex parte* proceeding, but something even more fundamentally antithetical to justice.

Also, repeated violations of the type catalogued in Mr. Hasbajrami's Initial Memo of Law, at 46-82, augmented by additional disclosures made since the Initial Memo of Law was filed, set forth **post**, at 13-14, vitiate any claim of "good faith." *See Herring v. United States*, 555 U.S. 135 (2009) (*United States v. Leon*, 468 U.S. 897 (1984), would not apply to "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence").

In that context, revelations since Mr. Hasbajrami's Initial Memo of Law was filed December 24, 2021, continue to disclose and document the FBI's extraordinary abuse of electronic surveillance and investigative authority. They also amplify the need for disclosure here to security-cleared defense counsel, as it remains apparent that an insular approach only encourages, even enables, impunity with respect to the violations of civil liberties that attend such secrecy.[9]

For example, the Office of the Director of National Intelligence's ("ODNI") calendar year 2021 *Office of Civil Liberties, Privacy, and Transparency, Annual Statistical Transparency*

---

[9] In a January 27,. 2022, Letter to Congress, Avril Haines, the Director of National Intelligence, warned that "[d]eficiencies in the current classification system . . . reduce[] the Intelligence Community's (IC) capacity to effectively support senior policymaker decision-making, and further erodes the basic trust that our citizens have in their government." January 5, 2022, Letter from Avril D. Haines, DNI, to Senator Ron Wyden and Senator Jerry Moran, available at bit.ly/3xYdzGq. *See also* Dustin Volz, "Vast Troves of Classified Info Undermine National Security, Spy Chief Says," *The Wall Street Journal*, January 27, 2022, available at on.wsj.com/3NiZ3P0.

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 13 of 15

*Report Regarding the Intelligence Community's Use of National Security Surveillance Authorities, Calendar Year 2021*, (April 29, 2022) ("*ODNI 2021 Transparency Report*"), available at bit.ly/3OEUVdb, notes, at 19, "[f]or the first time, the Annual Statistical Transparency Report now includes the number of queries using U.S. person identifiers run by FBI against unminimized Section 702 collection." It also points out that "the frequency with which FBI uses U.S. person query terms is greater than other agencies." *Id*., at 20.[10]

      The *ODNI 2021 Transparency Report* documents an astounding increase in the number of estimated FBI queries of U.S. person "unminimized Section 702-aquired contents and noncontents for foreign intelligence information and/or evidence of a crime" in 2021: from fewer than 1,324,057 from December 2019 through November 2020 to *3,394,053* from December 2020 through November 2021. *Id*., at 21.

      Perhaps even more disturbing, the *ODNI 2021 Transparency Report* identified "four instances in which . . . *a FISC order was required pursuant to section 702(f)(2) but not obtained* prior to reviewing the results of a query that was not designed to find and extract foreign intelligence information and was performed in connection with a predicated criminal investigation that does not relate to national security." *Id*., at 22 (emphasis added).

      Nor did the FBI even seek or obtain *any such orders*. *Id*. Thus, FBI had a *zero percent* compliance record last year. Nor is there any evidence of any discipline or other remedial efforts by either FBI or the FISC (which has not issued its customary annual opinion for 2021). Yet the government argues here that (1) the "good faith" exception applies; and (2) the Court should shield itself from evidence of systemic, unrelenting violations by FBI in conducting U.S. person querying of Section 702 databases.[11]

---

    [10] *See* Initial Memo of Law, at 13-15, 52 n. 33 & 112 n. 71, for discussion of prior ODNI Transparency Reports.

    [11] Separately, in January this year, Senators Charles Grassley (R – Ia.) and Richard Durbin (D – Ill.) drew attention to a 2019 FBI internal audit (not released publicly until January 2022) that "found widespread violations of internal policies designed to ensure proper handling of the FBI's most sensitive investigations." March 28, 2022, Letter from Richard J. Durbin and Charles E. Grassley to Christopher A. Wray, Director, FBI (footnote omitted), available at bit.ly/3bjxqrD. According to Sens. Grassley and Durbin, the findings demonstrated "apparently systemic violations of approval and notification requirements" within FBI. The audit examined 353 of the FBI's most sensitive investigations between between January 1, 2018, and June 30, 2019 – "just under half of all such matters that were pending during this 18-month period" – and "identified 747 violations," more than two per investigation. *Id*. *See* Federal Bureau of

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 14 of 15

    Given the persistent and pervasive volume of violations, and the repeated admonitions by the FISC, *see* Initial Memo of Law, at 46-82, reasonable government officials "should have known that the statute was unconstitutional." *Illinois v. Krull*, 480 U.S. 340, 355 (1987).[12]

    Also, in its opposition, at 12, the government asserts that "appropriately trained and authorized personnel of the agencies that have access to unminimized information acquired under Section 702 [] are permitted to review such information and evaluate and determine whether it reasonable appears to be foreign intelligence information or evidence of a crime." (Citation omitted).

    The government cannot both insist that its personnel are "appropriately trained and authorized" and maintain that the same personnel who continue to commit unpunished violations flagged by the FISC and other authorities are acting in "good faith." In that context, the "government's querying practices as a whole" are certainly relevant to evaluating whether the government can rely on the "good faith" exception, since those patterns and practices shed light on any exercise of "good faith." *See* Gov't Opp., at 25-26. *See also* Gov't Opp., at 31-32.[13]

    Moreover, the querying practices as a whole, and an unbroken historical record of non-

---

Investigation, Compliance and Mitigation Unit Report, 2019 Domestic Investigations and Operations Guide, Audit, Inspection Division, External Audit and Compliance Section, January 10, 2020, available at bit.ly/3QO3sME.

    [12] At least one FISC opinion has already concluded that the government violated the statutory requirements of the FAA during the very same period of time as the surveillance which intercepted Hasbajrami's communications. *See [Redacted]*, 2011 WL 10945618, at *9 (FISC Oct. 3, 2011) (finding that the Government's minimization procedures contradicted the FAA's requirements). *See also* Initial Memo of Law, at 17-18.

    [13] In its opposition, at 32, the government cites the opinion in *United States v. Rosen*, 477 F. Supp.2d 538, 552 (E.D.Va. 2006) for the proposition that "in the context of minimization, stating that errors in other cases 'are no more probative' of the presence of errors 'in this case than a general study of errors committed over a period of years in baseball would be probative of whether errors occurred in a specific game.' *Id*., at 552. Yet that is not an accurate statement. If, over a period of time representing a sufficient sample size, an error was committed in every baseball game, that would provide a basis for high statistical confidence that there would be an error committed in the next game if the fundamental circumstances and variables remained materially the same. The entire industry of baseball analytics (which now prevails in the game itself and dictates most strategy) is built predominantly on such probabilities.

LAW OFFICES OF
**DRATEL & LEWIS**

Honorable LaShann DeArcy Hall
United States District Judge
Eastern District of New York
June 24, 2022
Page 15 of 15

compliance within the Section 702 program and FISA generally are directly relevant to any claim of "good faith." Indeed, that would be the only way to judge "recurring or systemic negligence." *See Herring*, 555 U.S. at 144. Evaluated under the appropriate standards, it is clear that the "good faith" exception does not apply to the backdoor querying in this case.

## Conclusion

Accordingly, for the reasons set forth below, as well as those in Mr. Hasbajrami's Initial Memo of Law, it is respectfully submitted that Mr. Hasbajrami's motion should be granted in its entirety, the fruits of the warrantless backdoor querying suppressed, and the prosecution against Mr. Hasbajrami dismissed in its entirety.

In addition, and at a minimum, unless the government's mistakes are so clear to this Court that no input is needed to find for the defense, then the classified information in the government's Memo of Law (and any other pertinent classified information) should be disclosed to security-cleared defense counsel so that defense counsel may aid this Court in discerning the accuracy and veracity of the government's classified statements.

Respectfully Submitted,

Joshua L. Dratel
Michael K. Bachrach

*Attorneys for Defendant Agron Hasbajrami*

JLD/